983 P.2d 707 (1999)
97 Wash.App. 335
DIAMACO, INC., Appellant,
v.
AETNA CASUALTY & SURETY COMPANY, a foreign corporation, Respondent,
Ram, Inc., a Washington corporation; and City of Seattle, a municipality, Defendants.
No. 42988-4-I.
Court of Appeals of Washington, Division 1.
September 7, 1999.
As Amended on Grant of Reconsideration October 12, 1999.
*708 James Paul Wagner & A. Richard Dykstra, Seattle, for Appellant.
John Hitchcock Parnass & Thomas Stephens James, Seattle, for Respondent.
COX, J.
At issue in this appeal is whether Diamaco Inc.'s umbrella insurance policies issued by Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company) covered the City of Seattle's claims against Diamaco. The claims were for property damage incurred during a construction project that Diamaco performed under a contract with the City. Because the trial court correctly determined that there was no coverage under the policies, we affirm.
In July 1994, the City of Seattle awarded Diamaco a $1.4 million contract to construct several seismic retrofit systems for the Fauntleroy expressway. During construction in January 1995, City inspectors discovered defects in Diamaco's work. Eventually, the City determined that defective epoxy likely affected two portions of Diamaco's work on the retrofit, crossbeam blocks, and seat extenders. Because of the failure of the defective epoxy, the crossbeam blocks installed by or for Diamaco sustained physical damage in the form of cracking and spalling. Accordingly, the City directed Diamaco to replace the structures containing the defective epoxy. Diamaco complied. But the repair of the defective work was not completed within the time limits specified in the contract. Based on this default, the City sought liquidated damages and other expenses for Diamaco's failure to perform.
Diamaco commenced this declaratory judgment action to establish that the City's claims are covered under the comprehensive general liability insurance policies issued by Travelers. Based on the pleadings of Diamaco and Travelers, a record of stipulated facts, and briefing by the parties, the court entered findings of fact and conclusions of law. The court first concluded that coverage under the primary insurance policies was barred by a policy exclusion. The court further concluded that coverage under the umbrella policies was also barred by an exclusion.
Diamaco appeals. Travelers cross-appeals.
*709 The proper framework for our analysis begins with the basic proposition that the determination of coverage is a two-step process.[1] The insured must first establish that the loss falls within the "scope of the policy's insured losses."[2] Then, to avoid responsibility for the loss, the insurer must show that the loss is excluded by specific language in the policy.[3]
In its cross-appeal, Travelers claims that the trial court erred by concluding that Diamaco met its threshold burden of establishing that the "property damage" here was within the insuring clause of the policies. Conversely, Diamaco contends that the claim is within the insuring clause and that no exclusion applies. Neither party is entirely correct.
Interpreting an insurance contract is a question of law, reviewed de novo.[4] Insurance contracts should be interpreted as an average insurance purchaser would understand them, giving undefined terms in these contracts their "`"plain, ordinary, and popular"'" meanings.[5] Ambiguities in the insurance policy are strictly construed against the insurer.[6]

I. Insuring Clause
Travelers argues that Diamaco's claim was not eligible for coverage as "property damage" because there was no damage to the property of others, only to the property of the insured. We reject this argument.
The primary policies state:
We will pay those sums that [Diamaco] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
Property damage is defined as:
Physical injury to tangible property, including all resulting loss of use of that property..... or
Loss of use of tangible property that is not physically injured.
The plain language of the policies supports the view that the insuring clause covers a broad scope of property damage, both in terms of whose property is damaged and the character of the damage. The policy language, fairly read, does not support Travelers' contention that the term "property damage" is limited to "property of another."
Travelers claims that Weedo v. Stone-E-Brick, Inc.[7] is the "seminal case in this field cogently explain[ing] why CGL [comprehensive general liability] policies do not extend coverage to the defective work of a construction contractor." But Weedo does not stand for this expansive proposition. Instead, the court there explained that the limitations on coverage arose from the policy's stated exclusions, not the insuring clause:
The qualifying phrase, "to which this insurance applies" underscores the basic notion that the premium paid by the insured does not buy coverage for all property damage but only for that type of damage provided for in the policy. The limitations on coverage are set forth in the exclusion clauses of the policy, whose function it is to restrict and shape the coverage otherwise afforded.[[8]]
Thus, the court there denied coverage only because one of the policy's enumerated exclusions applied. The court's reasoning was not based on the theory that the insured's defective workmanship did not constitute "property *710 damage" within the insuring clause. Rather, it was based on a plain reading of the policy language.
Travelers also incorrectly claims that Westman Indus. Co. v. Hartford Ins. Group[9] "expressly invoked Weedo for the same proposition that CGL policies are not intended to provide coverage for the cost of repairing construction defects." Instead, Westman actually concluded that a policy exclusion applied to bar coverage. Whether the insured had established "property damage" within the meaning of the insuring clause was not at issue.
Travelers' reliance on Yakima Cement Prods. Co. v. Great American Ins. Co.[10] is also misplaced. There, our Supreme Court considered whether "property damage," within the meaning of the insuring clause, occurred when defective concrete panels were incorporated into an operations building that the Army contracted to have constructed. Our Supreme Court concluded that there was no property damage because there was no evidence that the incorporation of the defective panels diminished the value of the building.[11]
Yakima does not require us to abandon the principle of reading the insuring and exclusion clauses, as written, to determine if coverage exists. First, our Supreme Court there did not expressly state that "property damage" under CGL policies is always limited to the property of another. If the opinion had so held, then we would have expected to see a discussion of the rationale behind such a conclusion.[12] There is no such discussion in the opinion. Second, the court did not set forth any reasons for how such a limitation on coverage could be reconciled with the plain language of the insuring clause of the type of CGL policies at issue here. Our Supreme Court has consistently stated that insurance policies are to be interpreted as the average insurance purchaser would understand them.[13] At no time has our Supreme Court indicated that it considers Yakima to be an exception to this general canon of interpretation.
We also decline to follow the reasoning of Aetna Cas. and Surety Co. v. M & S Indus., Inc.[14] There, another division of this court stated that CGL policies insure against "damage to tangible property of another, not the insured's product."[15] But after closely reading the cases that the court cites in support of this principle, we conclude that they do not support it.[16]
The language in the policy at issue in Schwindt further buttresses our conclusion. There, the insuring clause limited coverage to "damage to or destruction of property *711 of others."[17] Had Travelers intended to exclude from its insuring clause the property of the insured in this case, it could easily have done so by using language similar to that used by the insurer in Schwindt. It did not. And, in one of its conclusions of law, the trial court in this case correctly noted this important distinction:
As [Travelers] argues, it is true that a comprehensive general liability policy is normally intended to provide coverage for the property of another. However, that intent can be carried out in one of two ways:
a) broad property damage coverage which relies on specific exclusions to limit coverage to the property of another; or b) [c]overage limited in the first place to the property of another. The language and structure of the policies in this case clearly adopt the first approach. Therefore, [Diamaco] has made its showing that there is generally coverage for the property damage here and Travelers must rely on specific exclusions to escape liability under the policy.
The trial court correctly concluded that Diamaco met its burden of showing that the loss was within the scope of the insuring clause of the policies.

II. Exclusion Clause
Having determined that the loss here falls within the insuring clause, we now turn to the second question: whether an exclusion applied to bar coverage. Diamaco's principal contention is that the trial court erred by concluding that exclusion (j) of the umbrella policy applied here to bar coverage. We disagree.
Because coverage exclusions "are contrary to the fundamental protective purpose of insurance," they are "strictly construed against the insurer" and "will not be extended beyond their clear and unequivocal meaning."[18] But that strict construction should not overcome "plain, clear language resulting in a strained or forced construction."[19] An exclusion is ambiguous if, on its face, its language is fairly susceptible to two different but reasonable interpretations.[20] The rule that ambiguities are construed against the insurer applies with added force to exclusions that limit coverage.[21]
Exclusion (j) excludes coverage for "property damage" to:
(1) Property you rent, occupy or which is in your care, custody or control if:
(a) You agreed to provide insurance for it; or
(b) Such property is owned by a person or organization controlling the insured or is under the control of the insured.
The trial court concluded that both subsections of the exclusion applied here to bar coverage. But we need address only the first subsection of the exclusion to decide this case.
Diamaco first contends that there was no evidentiary support for the trial court's conclusion that subsection (a) of the exclusion applied. In making this argument, Diamaco challenges finding of fact 39, which states: "Diamaco agreed to provide insurance for damaged portions of the property, under its care, custody and control." Diamaco also challenges conclusion 9, which states: "Diamaco was obligated to provide `property damage' insurance and thus `agreed to provide insurance for it.'" And Diamaco challenges the court's conclusion in its supplemental decision, which states: "Clearly the City in its contracts requires that the contractor supply insurance for any situation that potentially could result in liability or *712 repair expense to it regardless of `whose' property is damaged."
Evidence in the record supports finding 39. As part of its pleadings, the City provided a copy of its "Standard Specifications for Road, Bridge, and Municipal Construction." The City also provided an addendum pertaining to the Fauntleroy project, which expressly incorporated the standard specifications. And the standard specifications (as amended) stated that "[t]he Contractor shall obtain and maintain in full force and effect public liability and property damage insurance from the Award Date of the Contract until the Completion Date." The specifications further required:
The Contractor shall not begin work under the Contract until the required insurance has been obtained and approved by the Owner. Insurance shall provide coverage to the Contractor, all subcontractors, and the Owner. The coverage shall protect against claims for personal injuries, including accidental death, as well as claims for property damages which may arise from any act or omission of the Contractor or the subcontractor, or by anyone directly or indirectly employed by either of them.[[22]]
This is substantial evidence supporting the court's finding that Diamaco agreed to provide insurance for property within its care, custody, and control. The language of the standard specifications is broad, referring to "public liability" and "property damage" insurance. Nothing in that language supports Diamaco's contention that it was not obligated to provide insurance for property in its care, custody, and control. Moreover, Diamaco fails to present any evidence suggesting that the standard specifications did not apply here.
In turn, this finding supports the trial court's conclusion that subsection (a) applied because Diamaco had agreed to provide insurance for property within its care, custody, or control.
Because we conclude that coverage was barred under this exclusion, we need not address the remainder of Diamaco's arguments regarding other exclusions.

III. Attorney Fees
Diamaco requests its attorney fees and costs for trial and appeal. RAP 18.1(a) authorizes an award of attorney fees if permitted by applicable law. Our Supreme Court has stated that an insured is entitled to attorney fees for prevailing in a legal action against the insurer to obtain the full benefit of its insurance contract.[23] There is no basis, on this record, for awarding fees to Diamaco.
We affirm the order.
APPELWICK and COLEMAN, JJ., concur.
NOTES
[1] Schwindt v. Underwriters at Lloyd's of London, 81 Wash.App. 293, 298, 914 P.2d 119, review denied, 130 Wash.2d 1003, 925 P.2d 989 (1996) (quoting McDonald v. State Farm Fire and Cas. Co., 119 Wash.2d 724, 731, 837 P.2d 1000 (1992)).
[2] Schwindt, 81 Wash.App. at 298, 914 P.2d 119.
[3] Schwindt, 81 Wash.App. at 298, 914 P.2d 119.
[4] Daley v. Allstate Ins. Co., 135 Wash.2d 777, 783-84, 958 P.2d 990 (1998).
[5] Daley, 135 Wash.2d at 784, 958 P.2d 990 (citations omitted).
[6] Allstate Ins. Co. v. Peasley, 131 Wash.2d 420, 424, 932 P.2d 1244 (1997).
[7] 81 N.J. 233, 405 A.2d 788 (1979).
[8] Weedo, 81 N.J. at 237, 405 A.2d 788.
[9] 51 Wash.App. 72, 80, 751 P.2d 1242 (finding that there was no coverage because the policy's "products exclusion" applied), review denied, 110 Wash.2d 1036 (1988).
[10] 93 Wash.2d 210, 608 P.2d 254 (1980).
[11] Yakima, 93 Wash.2d at 218-19, 608 P.2d 254.
[12] See, e.g., Weedo, 81 N.J. at 238-241, 405 A.2d 788; Maryland Cas. Co. v. Reeder, 221 Cal.App.3d 961, 967-68, 270 Cal.Rptr. 719, review denied (1990).
[13] Daley, 135 Wash.2d at 784, 958 P.2d 990.
[14] 64 Wash.App. 916, 921-23, 827 P.2d 321 (1992).
[15] M & S, 64 Wash.App. at 921, 827 P.2d 321.
[16] M & S, 64 Wash.App. at 921-22, 827 P.2d 321; Guelich v. American Protection Ins. Co., 54 Wash.App. 117, 772 P.2d 536 (1989) (where insuring clause limited coverage to "physical injury," court concluded that the loss of use of a view was not an insured loss); Federated Serv. Ins. Co. v. R.E.W., Inc., 53 Wash.App. 730, 733, 738, 770 P.2d 654 (1989) (holding that policy exclusions applied to bar coverage); Marley Orchard Corp. v. Travelers Indem. Co., 50 Wash.App. 801, 806, 809, 750 P.2d 1294, review denied, 110 Wash.2d 1037 (1988) (finding coverage where insured's defective irrigation system injured orchard owner's trees, but concluding that design defect alone did not constitute property damage); General Ins. Co. of America v. International Sales Corp., 18 Wash.App. 180, 184, 187, 566 P.2d 966 (1977), review denied, 90 Wash.2d 1010 (1978) (in concluding that there was no coverage under the policy, the court appeared to rely on the plain language of both the policy coverage clause and the exclusionary clauses); Hauenstein v. St. Paul-Mercury Indem. Co., 242 Minn. 354, 356, 65 N.W.2d 122 (1954) (relying on policy exclusion directed at "any goods or products manufactured, sold, handled or distributed by the [i]nsured" in finding no coverage for damage to plaster that was defectively applied by the insured).
[17] Schwindt, 81 Wash.App. at 295, 914 P.2d 119 (italics ours).
[18] Stuart v. American States Ins. Co., 134 Wash.2d 814, 818-19, 953 P.2d 462 (1998).
[19] City of Bremerton v. Harbor Ins. Co., 92 Wash. App. 17, 21, 963 P.2d 194 (1998); see also Teague Motor Co. v. Federated Serv. Ins. Co., 73 Wash. App. 479, 484, 869 P.2d 1130 (1994) (although exclusions are strictly construed against the insurer, courts will not override the clear intent of the parties).
[20] State Farm Mut. Auto. Ins. Co. v. Ruiz, 134 Wash.2d 713, 721-22, 952 P.2d 157 (1998).
[21] Mendoza v. Rivera-Chavez, 88 Wash.App. 261, 268, 945 P.2d 232 (1997), review granted in part, 135 Wash.2d 1005, 959 P.2d 125 (1998).
[22] Clerk's Papers at 760; 793 (italics ours).
[23] Olympic S.S. Co. v. Centennial Ins. Co., 117 Wash.2d 37, 53, 811 P.2d 673 (1991) ("an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue").