HARTOG RAHAL PARTNERSHIP
Plaintiff,

v.

AMERICAN MOTORISTS INSURANCE COMPANY and American Manufacturers Mutual Insurance Company Defendant.

No. 02 Civ. 2293(RO).

United States District Court,
S.D. New York.

March 8, 2005.

Leonard S. Baum, Steven A. Holinstat, Proskauer Rose LLP, New York City, for Plaintiff.

Bruce Celebrezze, Sedgwick, Detert, Moran & Arnold LLP, Newark, NJ, for Defendants.

### OPINION

OWEN, District Judge.

In 1995 and 1996, Hartog sold an apple juice concentrate to many prominent food manufacturers, such as J.M. Smucker's Co. and Tropicana Products, Inc. They used it as one ingredient of products uniformly advertised to the consuming public as "100% pure juice". Unfortunately, Hartog's concentrate contained hydrolyzed inulin—a safe but artificial sweetener[1] and when this became public knowledge, the various buyers' products became unsaleable. Hartog, becoming aware of class action and indemnity suits being filed against its buyer around the country because of this, notified its commercial property and liability insurance coverage provider—the defendants in this action—collectively

---

**1.** While Hartog was not aware of this, it had a responsibility for the contents of the product it sold to the manufacturers.

"Kemper"—of its belief of coverage and need for immediate legal representation.[2] Kemper initially refused coverage. Accordingly, Hartog itself retained legal counsel, at a cost of $474,314.33, to negotiate with the manufacturers and settled with the various manufacturers and paid them their total damages from the use of its concentrate (including the price they paid for the concentrate). Kemper at some point thereafter conceded some liability and reimbursed Hartog for 80% of that total, finding that this portion adequately reflected covered consequential damages. Kemper, however, refused to reimburse Hartog for the remaining 20%—$814,352.57—on the ground that this was the cost of Hartog's concentrate to the manufacturers, and which put it within the terms of the "your product" exclusion in the policy which excludes coverage for: " '[p]roperty damage' to 'your product' arising out of it or any part of it." Kemper also declined to reimburse the said legal fees. The parties agree that New York law is applicable to the cross motions for summary judgment.

■ As to the unreimbursed legal fees, Kemper asserts that Hartog was never made a party to any "suit," and therefore it never had a duty to defend under the terms of the policy.[3] New York law, however, permits a demand letter to serve as the functional equivalent of a "suit" for these purposes where the claimant against an insured assumes a coercive adversarial posture and threatens the insured with probable and imminent financial consequences. See *Carpentier v. Hanover Ins. Co.*, 248 A.D.2d 579, 670 N.Y.S.2d 540 (2d Dep't 1998); *Jamestown Plastics, Inc. v. Travelers Indem. Co.*, 1997 WL 800870 (W.D.N.Y.1997). Here, the number of suits filed around the country on similar facts, the amount of damages claimed, the communicated imminence of formal filings against Hartog, and the demand letters threatening Hartog, in my view meet the above New York standard as the functional equivalent of a "suit." Accordingly, Hartog is granted summary judgment for reimbursement of its legal fees.

■ As to Hartog's claim to obtain from Kemper the said 20% of the settlements it paid to the manufacturers (the value of Hartog's concentrate sold to them), Kemper takes the position that this 20% is precisely what was meant to be excluded by the " 'property damage' to 'your product' " language in the policy. This position is supported by *Lowville Producer's Dairy Co-Operative, Inc., v. American Motorists Insurance Co.*, 198 A.D.2d 851, 604 N.Y.S.2d 421 (4th Dep't 1993). In that case, plaintiff, a cooperative association of dairy farmers, was an exclusive supplier of milk to a cheese manufacturing plant operated by Kraft Foods. Upon discovery that a dead mouse was trapped in a filter hose leading from the trucks to a silo, Kraft determined all the milk in the silo was

---

**2.** For example, on March 7, Nestle wrote to HRF expressing concern about the increasing number of class actions being filed, and stating that HRF would be held responsible for any damages it sustained. Nestle, facing 21 class actions, also indicated that it was preparing to file suit against HRF.

**3.** The relevant policy language is: (a) Kemper "will pay those sums that the insured becomes legally obligated to pay as damages because of ... 'property damage' to which this insurance applies;" (b) "Property damage" is defined as, "[p]hysical injury to tangible property, including all resulting loss of use of that property;" (c) Kemper has "the right and duty to defend any 'suit' seeking those damages," i.e., property damage; and (d) "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged.

contaminated, rejected the entire shipment, and while paying plaintiff association the cost of the disposal of the milk, defendant insurer rejected coverage for the loss of the milk itself, invoking the following Exclusion N of the policy: "This insurance does not apply ... to property damage to the named insured's products arising out of such products or any part of such products." *Id.* at 852, 604 N.Y.S.2d 421. The court in *Lowville* explicitly stated, *id.* at 853, 604 N.Y.S.2d 421:

> Exclusion N is intended to exclude coverage for damage to the insured's product, but not for damage caused by the insured's product to persons or property other than the insured's own product.... The policy was clearly intended to cover the possibility that the insured's product, once sold, would cause ... damage to property other than the product itself.... The risk that the insured would be required to make good on its warranty of quality was a contractual or commercial risk that defendant did not intend to insure.... It is a liability policy, not a performance bond. (citations omitted)

Similarly, the policy here being a "liability policy, not a performance bond," and concluding that the "property damage" to the apple juice concentrate is excluded under the "your product" language of the contract, Kemper is granted summary judgment.

Submit order on notice.