[No. 56750-1-I. Division One. October 23, 2006.]

NATIONAL CLOTHING COMPANY, INC., ET AL., *Respondents*, v. HARTFORD CASUALTY INSURANCE COMPANY, *Appellant*.

---

*John P. Hayes* and *Patrick S. Brady* (of *Forsberg & Umlauf, P.S.*), for appellant.

*Bradley W. Hoff* and *Todd C. Hayes* (of *Foster Pepper, P.L.L.C.*) and *Sarah K. Johnson* (of *Nordstrom Corporate Risk Management*), for respondents.

¶1 BECKER, J. — Hartford Casualty Insurance Company's insured, K&M Industries, Inc., sold counterfeit shampoo to Costco Wholesale Corp. When K&M was unable to authenticate the product, Costco had to destroy it. The question is whether a general liability policy obligates Hartford to cover K&M for its breach of an implied warranty of sale and to pay Costco for the purchase price, lost profits, and other costs associated with Costco's loss of use of the product. We conclude that the policy exclusion for damage to "your product" applies in these circumstances. The declaratory judgment in favor of Costco is reversed.

## FACTS

¶2 K&M sold and delivered over two million dollars worth of hair care products to Costco, a membership retailer, in October 2002. K&M represented that the products were manufactured by a company called TIGI. The products bore the TIGI label.

¶3 TIGI notified Costco that the products were likely counterfeit. Costco pulled the products from the shelves and demanded that K&M provide evidence of their authenticity as genuine TIGI-manufactured products. K&M failed to do so. Because of a federal law that prohibits trafficking in counterfeit goods, Costco was unable to sell the shampoo, give it away, or make any other use of it. Costco destroyed the products.

¶4 Costco made a claim against K&M asserting a breach of the Uniform Commercial Code warranty of title and against infringement. RCW 62A.2-312(3) ("Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like . . . ."). Costco sought to recover the original purchase price of the products; the cost of inspection, testing, storage, and destruction of the products; the loss of profits due to the inability to sell the products; and attorney fees.

¶5 K&M had a commercial general liability policy and an umbrella policy issued by Hartford Casualty Insurance Company. Costco demanded arbitration of the claim against K&M and notified Hartford. Hartford declined to defend K&M in the arbitration proceeding, and the arbitration was uncontested. The arbitrator awarded Costco some $2.4 million, including attorney fees, for K&M's breach. The superior court entered a final judgment confirming the award against K&M in August 2004.

¶6 Costco then filed a complaint against Hartford in superior court for declaratory relief and damages. On cross-motions for summary judgment, the court ruled that

Hartford's policy covered K&M for the loss. Judgment was entered obligating Hartford to pay Costco's judgment against K&M plus prejudgment interest.

¶7 Hartford appeals. In general, Hartford contends it was error to interpret the policies as though they provided coverage for the insured's breach of a contract. In general, we agree with Hartford. Nowhere in the plethora of cases cited by the parties have we found a general liability policy interpreted as providing coverage for the type of losses claimed by Costco. However, while Hartford primarily argues that denial of coverage is compelled by the insuring clause, we locate the result in an exclusion.

¶8 The interpretation of an insurance contract, a question of law, is reviewed de novo. *Diamaco, Inc. v. Aetna Cas. & Sur. Co.*, 97 Wn. App. 335, 338, 983 P.2d 707 (1999). The policy is construed as a whole and each clause is given force and effect. The terms of a policy should be given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 424, 38 P.3d 322 (2002). Courts interpreting insurance policies are bound by definitions provided therein. *Overton*, 145 Wn.2d at 427.

¶9 Determining whether coverage exists under a general liability policy is a two-step process. The burden first falls on the insured to show its loss is within the scope of the policy's insured losses. If such a showing has been made, the insurer can nevertheless avoid liability by showing the loss is excluded by specific policy language. *Overton*, 145 Wn.2d at 431-32.

## SCOPE OF COVERAGE

¶10 Hartford's duty to defend and indemnify under the general liability policy is triggered by the insured's liability for damages because of "property damage" that is caused by an "occurrence." The policy defines "property damage" in two ways, the first of which is "physical injury

to tangible property." Because there was no physical injury to the shampoo products, only the second definition of property damage is at issue in this case: "Loss of use of tangible property that is not physically injured."

¶11 Hartford contends that for property damage to be covered, it must be damage to property of a third party. According to Hartford, third party Costco's inability to sell insured K&M's products cannot constitute a loss of use. However, that limitation is not found in the definition of "property damage." This court considered a similar argument in *Diamaco*, 97 Wn. App. 335. The insured, a contractor, became liable to the city of Seattle for expenses resulting from delay in repairing its own defective work on a highway project. The insured sought coverage under a comprehensive general liability policy that defined property damage in the same way as the Hartford policy at issue here. The insurer argued that property damage is limited to "property of another." We rejected this argument, as the proposed limitation could not be found in the language of the policy. *Diamaco*, 97 Wn. App. at 340.

¶12 The insurer in *Diamaco* claimed that a comprehensive general liability policy does not cover a construction company for its own defective work. For this proposition, the insurer relied on the oft-cited case of *Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233, 405 A.2d 788 (1979). But as we explained in *Diamaco*, the *Weedo* court denied coverage based on an exclusion, not by giving a narrow interpretation to the insuring clause. *Diamaco*, 97 Wn. App. at 339. Similarly, in *Diamaco* we upheld the denial of coverage based on an exclusion, not because the only damage was to the property of the insured.

¶13 *Overton* confirms that an insuring clause of the type considered here should not be construed as having a limitation based on who owns the property that is damaged. "The question of ownership of damaged property applies only to policy exclusions. The determination of an 'occurrence' takes place without consideration of whether the damage was to the insured's own property or to that of a

third party." *Overton*, 145 Wn.2d at 432 (citing *Diamaco* with approval). Following *Diamaco*, we reject Hartford's argument insofar as it is based on the insuring clause.

## "DAMAGE TO YOUR PRODUCT" EXCLUSION

¶14 Each Hartford policy—the general liability policy and the umbrella policy—uses the same terminology to exclude property damage arising out of K&M's product. "This insurance does not apply to . . . 'Property damage' to 'your product' arising out of it or any part of it."

¶15 Each policy contains the same definition of "your product." As set forth in the general liability policy:

21. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   (1) You;

   (2) Others trading under your name; or

   (3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.[1]

¶16 Coverage exclusions are strictly construed against the insurer and will not be extended beyond their clear and unequivocal meaning. But the rule of strict

---

[1] Clerk's Papers at 113.

construction should not overcome plain, clear language and should not result in a strained or forced construction. *Diamaco*, 97 Wn. App. at 342.

¶17 Costco contends the "damage to your product" exclusion is not applicable. The first step in Costco's argument is to characterize the loss of use of the shampoo as arising out of K&M's breach of the warranty of title and against infringement. Costco then proceeds directly to what "Your product" includes. The policy specifically mentions warranties with respect to fitness, quality, durability, performance, and use, but it does not specifically mention the warranty of title and against infringement. Citing the maxim expressio unius est exclusio alterius,[2] Costco argues that it would have been a simple matter for Hartford to protect itself against claims arising out of "infringement of trademark" or "designation of authenticity," as it did in a different exclusion for "Personal and Advertising Injury." Costco contends that Hartford's failure to list the warranty of title and against infringement means that a loss arising from a breach of that warranty is not excluded.

¶18 Costco's argument fails because what "Your product" means is not limited to the specified warranties. "Your product" means broadly, "[a]ny goods . . . distributed" by you. The shampoo distributed by K&M falls unambiguously within that definition. The term "Your product" is further defined to include certain warranties, but the specific mention of those warranties as being included does not reach back to confine the meaning of "Your product"; rather, it expands the meaning of that term to include the warranties.

¶19 Costco's property damage—its loss of use of the shampoo—arose out of the shampoo. Because the shampoo was counterfeit, Costco was unable to sell it or make any other use of it. When an insured becomes liable for damage to its own tangible product that occurs either by physical

---

[2] " '[T]o express or include one thing implies the exclusion of the other, or of the alternative.' " *Cowlitz Stud Co. v. Clevenger*, 157 Wn.2d 569, 575 n.4, 141 P.3d 1 (2006) (quoting BLACK's LAW DICTIONARY 620 (8th ed. 1999)).

injury or loss of use, and such damage arises out of the product, the insured is not covered. This is the long and short of our analysis. The fact that Costco's litigation theory was breach of a warranty not mentioned in the policy does not obscure the fundamental reality that Costco's claim involves damage to K&M's product arising out of that product.

¶20 The rationale for a "damage to your product" exclusion in a comprehensive general liability policy is set forth in *Weedo*, where the damage claimed arose out of faulty workmanship by a masonry contractor. The court explained that indemnity is typically available only when the insured's work or product, once relinquished or completed, accidentally causes injury to persons or damage to other property. It is not available to cover the cost of repair or replacement of work or products that do not satisfy contract warranties:

> The insured-contractor can take pains to control the quality of the goods and services supplied. At the same time he undertakes the risk that he may fail in this endeavor and thereby incur contractual liability whether express or implied. The consequence of not performing well is part of every business venture; the replacement or repair of faulty goods and works is a business expense, to be borne by the insured-contractor in order to satisfy customers.

*Weedo*, 81 N.J. at 239. In other words, when the product is " 'not that for which the damaged person bargained,' " the damage is the result of an ordinary business risk assumed by the insured. *Weedo*, 81 N.J. at 240 (quoting Roger C. Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know*, 50 Neb. L. Rev. 415, 441 (1971)).

¶21 Applying the rationale embodied in *Weedo*, other courts have denied coverage when a third party claimed damage arising out of the inability to sell or use the insured's adulterated products. One such case is *Lowville Producer's Dairy Co-operative, Inc., v. American Motorists Insurance Co.*, 198 A.D.2d 851, 604 N.Y.S.2d 421 (1993).

The insured, a dairy, sought coverage for the cost of milk that had to be dumped when a dead mouse was found in the silo from which the milk had been sold. Coverage was denied. The court explained that the liability policy was "clearly intended to cover the possibility that the insured's product, once sold, would cause bodily injury or damage to property other than the product itself." But the "damage to your product" exclusion was added to ensure that the policy did not become a performance bond guaranteeing payment for an insured's breach of a contractual warranty: "The risk that the insured would be required to make good on its warranty of quality was a contractual or commercial risk that defendant did not intend to insure. It is a liability policy, not a performance bond." *Lowville*, 198 A.D.2d at 853 (citations omitted).

¶22 *Lowville* was followed in *Hartog Rahal Partnership v. American Motorists Insurance Co.*, 359 F. Supp. 2d 331 (S.D.N.Y. 2005). In that case, the insured had incorporated artificially sweetened juice into a concentrate used in products that were supposed to be 100 percent pure juice. The juice products became unsaleable, and the insured had to compensate the buyers for the value of the concentrate sold to them. The court found a "damage to your product" exclusion applicable because the damage arose out of the concentrate.

¶23 Like the milk and juice products in the New York cases, the shampoo products delivered to Costco were unsaleable. They were not the genuine TIGI products K&M had promised to deliver. The risk of liability for selling Costco a product other than what was bargained for was an ordinary contractual or commercial risk within K&M's control, not a liability risk of the type that a general liability policy is intended to insure against.

¶24 In summary, Costco's claim against Hartford is defeated by the plain language of the exclusion. Costco's loss of use of the shampoo products arose out of the products—they were counterfeit. Hartford is not responsible for covering K&M's liability to Costco.

¶25 Reversed and remanded for entry of summary judgment in favor of Hartford.

APPELWICK, C.J., and COX, J., concur.

Review denied at 161 Wn.2d 1006 (2007).