IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

EDWARD AND MAYA ELEAZER,
husband and wife,

            Appellants,

        v.

FIRST AMERICAN TITLE INSURANCE
COMPANY, a foreign insurer; THE
TALON GROUP, a domestic
Washington corporate entity or
partnership, d/b/a Talon Group Escrow
and/or Talon Title; DOE PERSONS 1-5;
and ROE ENTTITIES 6-10,

            Respondents.

No. 75097-6-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: March 27, 2017

SCHINDLER, J. — Edward and Maya Eleazer appeal summary judgment dismissal of their lawsuit against escrow agent The Talon Group and First American Title Insurance Company. We affirm.

Nordstrom Property

Loyal Mary Nordstrom owned two adjoining lots in Index, Washington. A 12-room hotel and restaurant, the Bush House Hotel and Restaurant, was on one lot and a 3-bedroom house was on the other lot.

In 1993, Nordstrom installed a commercial-grade on-site septic system (OSS) for the Bush House in the front yard of the lot with the three-bedroom house. The

Snohomish Health District (SHD) approved the OSS on the condition that "[a]ll components of onsite sewage facility on separate tax lots from the Bush House Restaurant must be tied to Bushhouse [sic] via recorded easements" and that the SHD "conditional approval letter" is "recorded on the property title."

Nordstrom recorded a copy of the SHD conditional approval letter for the OSS. Instead of an easement, Nordstrom recorded a "Declaration of Restrictive Covenants." The May 24, 1993 Declaration of Restrictive Covenants states that the parcels of property "are to be considered as one total building lot."

Purchase and Sale Agreement

In 2007, Edward and Maya Eleazer entered into negotiations with Nordstrom to purchase the three-bedroom house. The Eleazers knew the "front yard contained a septic drain field" for "the neighboring Bush House" and the backyard contained a septic system for the house.

According to Nordstrom, the Eleazers "knew that they needed to grant an OSS easement" for the Bush House. Nordstrom states that after SHD approved the easement, the Declaration of Restrictive Covenants "could be cancelled." In her declaration, Nordstrom states:

> When . . . my real estate agent in 2007 . . . came to me with the Eleazer offer, the entire idea was that Eleazers would prepare an OSS easement, seek approval of the form of the easement from SHD and then, after the SHD-approved OSS easement was granted and recorded, the Declaration of Restrictive Covenants could be cancelled. Eleazers knew the commercial drainfield for the Bush House was in their front yard before they purchased it. They also knew that they needed to grant an OSS easement so the Bush House Hotel and Restaurant could continue to use and maintain that commercial drain[ ]field.

2

The Eleazers submitted a residential real estate purchase and sale agreement (REPSA) on February 25, 2007. Because the offer did not address the easement, Nordstrom's listing agent prepared a "Form 34" addendum. The Form 34 addendum to the RESPA states the Eleazers agree to grant an easement for the OSS.

IT IS AGREED BETWEEN THE SELLER AND BUYER AS FOLLOWS:

Buyer agrees to grant access for maintenance of OSS to Bush House [Bed & Breakfast]. Access to be granted in the form of a recorded easement agreeable to both parties.

The Talon Group (Talon) acted as escrow agent for the transaction. Talon is a division of First American Title Insurance Company (First American). Neither the Eleazers nor Nordstrom provided a copy of the REPSA Form 34 addendum to Talon or First American. On April 9, 2007, First American issued a commitment for title insurance. The commitment for title insurance does not list the 1993 SHD letter or Declaration of Restrictive Covenants.

On May 8, 2007, the Eleazers signed the "Closing Agreement and Escrow Instructions" (Escrow Instructions). On May 9, Nordstrom conveyed title to the house to the Eleazers by statutory warranty deed. The Eleazers did not enter into an easement for the OSS as agreed in the Form 34. On May 10, First American issued the "Policy of Title Insurance" (Title Policy).

2011 Title Insurance Claim

The Eleazers renovated the house between 2007 and 2010. In 2010, the Eleazers learned about the recorded 1993 SHD letter and restrictive covenants.

Without disclosing that they knew the OSS was located in their front yard or that they had agreed to grant an easement for the OSS, on May 3, 2011, the Eleazers

3

submitted a claim to First American. The letter to First American states the Eleazers "acquired copies of two recorded documents which they believe affect the marketability of their title." The letter asserts the 1993 recorded documents "make the title unmarketable" and "are, or could be construed to be, encumbrances on the title." The Eleazers requested First American "[i]nitiate legal action to remove the restrictive covenants, and nullify the Snohomish Health District letter."

On July 14, First American Regional Claims Manager and attorney Daryl Lyman denied the claim. The letter from First American states that although the 1993 recorded documents "may perhaps impair the market value of the property," the documents did not make the property unmarketable. "[W]hile the undisclosed declaration of restrictive covenant may constitute an encumbrance on your title," First American was not obligated to indemnify because the Eleazers had "sustained no present loss."

On October 17, the Eleazers' attorney sent First American a lengthy letter challenging the decision to deny the claim. The attorney states that if First American did not agree to a settlement, the Eleazers would file a lawsuit for damages.

In response, First American requested the Eleazers provide a copy of the "Form 17" seller disclosure statement that Nordstrom provided the Eleazers before closing. The letter states, in pertinent part:

> Presumably Ms. Nordstrom provided the Eleazers the required Form 17 pursuant to RCW 64.06.020, which specifically asked, among other things:
>
>> Are there any zoning violations, nonconforming uses, or any unusual restrictions on the property that would affect future construction or remodeling?
>>
>> Are there any covenants, conditions, or restrictions recorded against the property?

4

At your convenience, please provide me a copy of the completed Form 17. If Ms. Nordstrom disclosed the subject issues to the Eleazers, such disclosure prior to closing would provide for another exception under the policy. Exclusion 4.a. provides that the Eleazers are not insured against loss resulting from risks that are created, allowed, or agreed to, whether or not they appear in the Public Records.

The Eleazers' attorney sent First American a copy of pages two through five of Form 17. The attorney told First American that although the "questions soliciting information on encumbrances, easements, and restrictive covenants are on page one of the seller disclosure statement," he had "never seen page 1 of this document."

In December 2011, Nordstrom sold the Bush House to Bush House LLC. Sometime between 2010 and late 2011, the backyard septic system for the Eleazers' house failed. The Eleazers submitted an application to connect to the Bush House OSS in their front yard.

On February 3, 2012, SHD sent the Eleazers a letter denying the application because the 1993 Declaration of Restrictive Covenants created uncertainty about "who has ownership/control of the OSS pressure bed and the immediate area." The letter states, in pertinent part:

> Although the Declaration of Restrictive Covenants may just be some sort of cloud on the title of Lots 25 thru 28, it also may be a legal instrument granting dominant control of the existing OSS pressure bed and portions of Lots 25 thru 28 to the property owner of Lots 29 thru 33. Until this situation can be adequately resolved, it is not readily clear who has ownership/control of the OSS pressure bed and the immediate area. As such SHD cannot demonstrate that the requirements contained in WAC 246-272A have been met for permit issuance.

On February 7, the Eleazers informed First American that SHD denied the application to connect to the front yard OSS. The attorney asserts the 1993 restrictive

5

covenants were an encumbrance on the Eleazers' title and a covered risk under the Title Policy.

First American agreed the 1993 recorded documents constituted a covered risk under the Title Policy. The letter states, in pertinent part:

> The Declaration of Restrictive Covenants and the SHD letter recorded in 1993 have an ambiguous impact on the Eleazers' use of their property; solely for purposes of the present claim, however, First American accepts that they are recorded documents within the scope of Covered Risk Nos. 5 and 9 in that they limit the location where the Eleazers can install a septic system.

The February 22 letter states that under the terms of the policy, First American would pay the Eleazers their actual loss based on the property's diminution in value "caused by the limitation on siting a drain[ ]field to serve the residence." First American notes a "diminution-in-value appraisal can take some time" and offered to pay the difference in price between a lower cost low-pressure septic system and a more expensive high-pressure septic system that could be located in the back yard.

On February 23, the Eleazers' attorney told First American he would "analyze your settlement plan, discuss it with my client, and respond later." The letter also states the Eleazers planned to resolve "issues involving title or possession of real property . . . in Superior Court."

Quiet Title Action

In April, the Eleazers filed a quiet title action against Bush House LLC and SHD. The Eleazers alleged the 1993 SHD letter and restrictive covenants were invalid and Nordstrom breached the statutory warranty deed. Bush House LLC and Nordstrom filed a counterclaim against the Eleazers for breach of the Form 34 addendum agreement to grant an OSS easement.

On cross motions for summary judgment, the trial court dismissed the quiet title action. The court ruled the Eleazers "are in breach of the Form 34 promise to grant an OSS easement to the Bush House." The May 23, 2013 order states the Eleazers had "actual knowledge of the OSS in the front yard of their property" and "contractually promised to grant an OSS easement" before they purchased the property. The order states, in pertinent part:

### 5. Facts That Appear Without Substantial Controversy

. . . .

C.   Even if Eleazers did not have actual notice of the SHD letter and Covenants, they did have actual knowledge of the OSS in the front yard of their property before they purchased.

D.   Eleazers contractually promised to grant an OSS easement, which was the direct underlying purpose of the SHD letter and Covenants.

The trial court appointed a special master and ordered the Eleazers to grant and record an OSS easement. The order attached the easement with a detailed legal description. The Eleazers filed an appeal.

In an unpublished opinion, we concluded the court erred in drafting the easement. Eleazer v. Bush House, LLC, 183 Wn. App. 1007, 2014 WL 4198384, at *8. We held the Form 34 addendum imposed an implied duty of good faith on the Eleazers and on remand, if the Eleazers did not make a good faith "offer of easement terms to Nordstrom," Nordstrom could seek damages or rescission. Eleazer, 2014 WL 4198384, at *8.[1]

---

[1] We held, in pertinent part:

If, on remand, the Eleazers fail to make a "good faith" offer, then Nordstrom may seek either damages from the Eleazers or rescission of the REPSA. If the Eleazers do make a good faith offer, however, then Nordstrom must either accept the offer, entice the Eleazers to accept a counteroffer, seek rescission of the REPSA, or forego a remedy.

Eleazer, 2014 WL 4198384, at *8. There is no indication in the record that the Eleazers have made a good faith offer for an easement.

## Denial of Coverage

After receiving a copy of the court order in the quiet title action, First American learned for the first time that the Eleazers knew the OSS was located in their front yard and agreed to grant an easement to Nordstrom.

On June 10, First American notified the Eleazers that based on the order in the quiet title action, the exclusion for risks allowed and agreed to by the insured barred coverage.

> It appears from the Court's ruling that the Eleazers expressly agreed to grant an easement to The Bush House for the septic system located in their front yard. Under those circumstances, our preliminary conclusion is that the Eleazers' claim falls within the scope of Exclusion No. 4(a) and is not covered by First American's title policy.

On June 25, First American denied coverage because the "presence of the septic system and The Bush House's right of access . . . are matters that were allowed or agreed to by the Eleazers." First American also notes that the Eleazers did not disclose "material information."

> The Snohomish County Superior Court has ruled that the Eleazers expressly agreed in the REPSA to grant an easement so The Bush House could maintain the septic system located on their property. The Eleazers closed on their purchase knowing that the septic system was located, and would remain, in their front yard; they did not demand before closing that Nordstrom remove the septic system. The presence of the septic system and The Bush House's right of access for maintenance, therefore, are matters that were allowed or agreed to by the Eleazers. Accordingly, the Eleazers' claim falls within the scope of Exclusion No. 4(a) and is not covered by First American's title policy.
>
> . . . .
>
> Moreover, . . . in all the correspondence between the Eleazers and First American over the last two years, they never disclosed their pre-closing knowledge of the septic system in their front yard or the REPSA's provision to grant an easement for access to that system until your June 4, 2013, letter enclosing the Superior Court's order on summary judgment.

This studled [sic] avoidance of patently material information indicates an intentional effort to mislead First American. Accordingly, the withholding of material information provides an additional ground for denying coverage.

Lawsuit against Talon and First American

The Eleazers filed a lawsuit against the escrow agent Talon and First American. The Eleazers alleged Talon breached the Escrow Instructions and its fiduciary duty by not searching for and disclosing the 1993 SHD letter and restrictive covenants. The Eleazers alleged First American breached the Title Policy and acted in bad faith by denying their claim for "covered losses." The Eleazers also alleged First American violated the Insurance Fair Conduct Act (IFCA), RCW 48.30.010-.015.

First American filed a counterclaim alleging the Eleazers' "claims are not covered by the Title Policy."

Summary Judgment Dismissal of Lawsuit against Talon and First American

Talon and First American filed a motion for summary judgment dismissal of the lawsuit. Talon argued it did not breach the Escrow Instructions or its fiduciary duty because it had no duty to discover and disclose the 1993 SHD letter and restrictive covenants. First American argued there was no loss and the coverage claims were excluded because the Eleazers knew about the OSS, agreed to grant an easement for it, and withheld information.

In support, Talon submitted the declaration of First American Regional Claims Manager Daryl Lyman. Lyman states, "The Form 34 relating to the drainfield easement . . . does not appear anywhere in the Escrow File. That document was never provided to Talon by the Eleazers, Nordstrom, or their agents." First American submitted a number of documents including the commitment for title insurance, the Escrow

Instructions, the Title Policy, numerous letters between First American and the Eleazers, declarations filed by the Eleazers and Nordstrom in the quite title action, and the May 2013 order dismissing the quite title action.

The Eleazers filed a cross motion for summary judgment. The Eleazers argued Talon had a duty under the Escrow Instructions to obtain and provide "a written statement from Ms. Nordstrom regarding the 1993 encumbrances." The Eleazers argued the 1993 SHD letter and restrictive covenants were covered risks under the Title Policy and First American breached the policy by not paying damages.

In support, the Eleazers submitted declarations and a number of documents. The Eleazers admit they knew the Bush House OSS was located in their front yard when they purchased the property. But according to the Eleazers, Nordstrom's real estate agent "told us that the drain field in the bungalow's front yard was designed to be large enough for the bungalow's use as well as the Bush House's use, in case the bungalow's current on-site septic system ever failed." The Eleazers state they "would have expected any easement for our consideration to have been consistent" with the representation that the OSS drain field was large enough to serve both properties. The Eleazers state they asked the escrow agent at closing "about the Bush House septic system easement issue." According to the Eleazers, the "Talon escrow agents looked through all the paperwork 'to see if they had missed anything' " and told the Eleazers they "did not find anything in the paperwork that mentioned the Bush House septic system."

The court granted the motion of Talon and First American and dismissed the lawsuit.

Appeal

The Eleazers contend the court erred in dismissing the lawsuit against Talon and First American on summary judgment.

We review an order of summary judgment dismissal de novo and engage in the same inquiry as the trial court. Kut Suen Lui v. Essex Ins. Co., 185 Wn.2d 703, 709-10, 375 P.3d 596 (2016). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014). We consider all facts and make all reasonable factual inferences in the light most favorable to the nonmoving party. Young v. Key Pharms., Inc., 112 Wn.2d 216, 226, 770 P.2d 182 (1989). Where reasonable minds could reach but one conclusion from the admissible facts in evidence, summary judgment should be granted. Allen v. State, 118 Wn.2d 753, 760, 826 P.2d 200 (1992); LaMon v. Butler, 112 Wn.2d 193, 199, 770 P.2d 1027 (1989).

We interpret contracts, including insurance policies, de novo as a matter of law. Quadrant Corp. v. Am. States Ins. Co., 154 Wn.2d 165, 171, 110 P.3d 733 (2005); Black v. Nat'l Merit Ins. Co., 154 Wn. App. 674, 680, 226 P.3d 175 (2010). A contract "should be construed as a whole and, if reasonably possible, in a way that effectuates all of its provisions." Colo. Structures, Inc. v. Ins. Co. of the W., 161 Wn.2d 577, 588, 167 P.3d 1125 (2007).[2] We give words in a contract an "ordinary, usual, and popular meaning unless the agreement as a whole clearly demonstrates a contrary intent." 4105 1st Ave. S. Invs., LLC v. Green Depot WA Pac. Coast, LLC, 179 Wn. App. 777,

---

[2] Footnote omitted.

784, 321 P.3d 254 (2014); <u>Hearst Commc'ns, Inc. v. Seattle Times Co.</u>, 154 Wn.2d 493, 504, 115 P.3d 262 (2005).

<u>Dismissal of Claims against Talon</u>

The Eleazers assert that under the Escrow Instructions, Talon had a contractual and fiduciary duty to search for the 1993 restrictive covenants and SHD letter. Talon contends it had no duty to search for the 1993 recorded documents.

The existence of a duty is a question of law we review de novo. <u>Washburn v. City of Fed. Way</u>, 178 Wn.2d 732, 753, 310 P.3d 1275 (2013). The "duty to identify or disclose title defects . . . is owed only in preparing an abstract of title." <u>Centurion Props. III, LLC v. Chicago Title Ins. Co.</u>, 186 Wn.2d 58, 69-70, 375 P.3d 651 (2016). The duties and limitations of an escrow agent are defined by the escrow instructions. <u>Centurion Props.</u>, 186 Wn.2d at 70; <u>Denaxas v. Sandstone Court of Bellevue, L.L.C.</u>, 148 Wn.2d 654, 663, 63 P.3d 125 (2003). An escrow agent has a duty to exercise " 'ordinary skill and diligence, and due or reasonable care.' " <u>Denaxas</u>, 148 Wn.2d at 663[3] (quoting <u>Nat'l Bank of Wash. v. Equity Inv'rs</u>, 81 Wn.2d 886, 910, 506 P.2d 20 (1973)). The escrow agent has a fiduciary duty to " 'conduct the affairs with which [it] is entrusted with scrupulous honesty, skill, and diligence.' " <u>Nat'l Bank</u>, 81 Wn.2d at 910 (quoting 30A C.J.S. ESCROW § 8 (1965)).

The Escrow Instructions direct Talon to obtain a preliminary commitment for title insurance. The Escrow Instructions unequivocally state Talon can "rely on the [preliminary commitment for title insurance] in the performance of its duties" and Talon "shall have no responsibility or liability for any title defects or encumbrances which are

---

[3] Internal quotation marks omitted.

not disclosed in the [preliminary commitment for title insurance]." The Escrow Instructions state, in pertinent part:

> **Title Insurance.** The closing agent is instructed to obtain and forward to the parties a preliminary commitment for title insurance on the property . . . (referred to herein as "the title report"). <u>The closing agent is authorized to rely on the title report in the performance of its duties and shall have no responsibility or liability for any title defects or encumbrances which are not disclosed in the title report.</u>[4]

The undisputed record establishes the preliminary commitment for title insurance does not include the 1993 restrictive covenants or SHD letter. Under the plain and unambiguous terms of the Escrow Instructions, Talon had "no responsibility or liability for any title defects or encumbrances which are not disclosed in the title report."

The Eleazers also argue the "Title Contingency Addendum" in the REPSA imposed a duty on Talon to search for the 1993 recorded documents. The Title Contingency Addendum states, in pertinent part:

> **Title Contingency.** This Agreement is subject to Buyer's review of a preliminary commitment for title insurance, together with easements, covenants, conditions and restrictions of record, <u>which are to be obtained by Buyer</u>, to determine they are consistent with Buyer's intended use of the Property.[5]

The Title Contingency Addendum imposes no duty on Talon to search for and disclose recorded documents. The addendum clearly states the listed encumbrances "are to be obtained by <u>Buyer</u>."[6] And because the undisputed record also shows neither the Eleazers nor Nordstrom provided the Form 34 addendum to Talon, there was no duty to

---

[4] Emphasis added.

[5] Emphasis added.

[6] (Emphasis added.) The Eleazers argue Talon violated its fiduciary duty because it did not include the restrictive covenants and 1993 SHD letter on the statutory warranty deed executed by Nordstrom. But nothing in the Escrow Instructions directs Talon to do so.

obtain verification of the status of the Form 34 easement agreement.[7]

The court did not err in dismissing the claim against Talon for breach of contract or fiduciary duty.

Dismissal of Claims against First American

The Eleazers assert the court erred in concluding their claims are not covered by the Title Policy. First American contends the undisputed record establishes coverage is barred by the policy exclusion for risks allowed or agreed to by the insured.

"The party seeking to establish coverage bears the initial burden of proving coverage under the policy has been triggered." Pleasant v. Regence BlueShield, 181 Wn. App. 252, 261, 325 P.3d 237 (2014); Diamaco, Inc. v. Aetna Cas. & Sur. Co., 97 Wn. App. 335, 337, 983 P.2d 707 (1999). "The insurer bears the burden of establishing an exclusion to coverage." Pleasant, 181 Wn. App. 262; Diamaco, 97 Wn. App. at 337. "We construe any ambiguity in an exclusion against the insurer." Pleasant, 181 Wn. App. 262; McDonald v. State Farm Fire & Cas. Co., 119 Wn.2d 724, 733, 837 P.2d 1000 (1992).

The Title Policy insures "against actual loss, including any costs, attorneys' fees and expenses provided under this Policy, resulting from the Covered Risks." The Policy states, in pertinent part:

> **OWNER'S COVERAGE STATEMENT**
> This Policy insures You against actual loss, including any costs, attorneys' fees and expenses provided under this Policy, resulting from the Covered

---

[7] The Escrow Instructions state, in pertinent part:
**Verification or Existing Encumbrances.** The closing agent is instructed to request a written statement from the holder of each existing encumbrances on the property, verifying its status, terms, balance owing and, if it will not be removed at closing, the requirements that must be met to obtain a waiver of any due-on-sale provision. The closing agent is authorized to rely upon such written statements in the performance of its duties, without liability or responsibility for their accuracy or completeness.

Risks set forth below, if the Land is an improved residential lot on which there is located a one-to-four family residence and each Insured named in Schedule A is a Natural Person.

The policy lists a number of "Covered Risks" including "Someone else has a right to limit Your use of the Land," "Someone else has an encumbrance on Your Title," and "Your Title is unmarketable."[8]

First American asserts the Eleazers cannot show an actual loss resulting from a covered risk. The Eleazers argue there are material issues of fact on actual loss and coverage. Even if there are questions of fact on actual loss, the undisputed record establishes coverage is barred under the exclusion for risks allowed or agreed to by the insured. Exclusion 4(a) of the Title Policy states, in pertinent part:

> **EXCLUSIONS**
> . . . You are not insured against loss, costs, attorneys' fees, and expenses resulting from:
> . . . .
> 4. Risks:
>      a. that are created, allowed, or agreed to by You, whether or not they appear in the Public Records.

There is no dispute the Eleazers knew the Bush House OSS was located in the front yard before they purchased the property in 2007. There is no dispute the Eleazers

---

[8] The policy states, in pertinent part:
**COVERED RISKS**
The Covered Risks are:
. . . .
5. Someone else has a right to limit Your use of the Land.
. . . .
9. Someone else has an encumbrance on Your Title.
. . . .
26. Your Title is unmarketable, which allows someone else to refuse to perform a contract to purchase the Land, lease it or make a Mortgage loan on it.

agreed to grant an easement for the OSS but did not do so. Because the Eleazers allowed or agreed to the risk, exclusion 4(a) bars coverage.[9]

Dismissal of Bad Faith Claim

The Eleazers contend the court erred in dismissing their bad faith claim against First American. Because the exclusion bars coverage, the Eleazers cannot establish bad faith. See Overton v. Consol. Ins. Co., 145 Wn.2d 417, 433, 38 P.3d 322 (2002) ("If the insurer's denial of coverage is based on a reasonable interpretation of the insurance policy, there is no action for bad faith.").

Dismissal of IFCA Claim

The Eleazers assert material issues of fact preclude dismissal of their IFCA claims. The Eleazers claim First American did not comply with "statutory and regulatory duties" under IFCA. The Eleazers cannot show First American acted unreasonably in denying the claim for coverage. See Ainsworth v. Progressive Cas. Ins. Co., 180 Wn. App. 52, 79, 322 P.3d 6 (2014).[10] And in a recent case, Perez-Crisantos v. State Farm Fire and Casualty Co., No. 92267-5, 2017 WL 448991, at *6-*7 (Wash. Feb. 2, 2017), the Washington Supreme Court held that "IFCA does not create an independent cause of action for regulatory violations."

---

[9] We reject the argument that the efficient proximate cause rule requires First American to provide coverage. Because the decision to purchase the property was made after learning about the OSS and the Eleazers agreed to grant an easement, the efficient proximate cause rule does not apply. See Graham v. Pub. Emps. Mut. Ins. Co., 98 Wn.2d 533, 538, 656 P.2d 1077 (1983). Further, we need not address the failure to cooperate provision. But as the undisputed record shows, the Eleazers did not disclose that they knew about the OSS in 2007 or that they agreed to an easement.

[10] RCW 48.30.015(1) states, in pertinent part:

Any first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs.

We affirm summary judgment dismissal of the lawsuit against Talon and First American.

WE CONCUR: