1 P.3d 1167 (2000)
141 Wash.2d 55
Dennis HAYDEN, Randy Hayden, and Cosmas St. Hilaire, d/b/a Hayden Farms, Petitioner,
v.
MUTUAL OF ENUMCLAW INSURANCE CO., a Washington corporation, Respondent.
No. 68096-5.
Supreme Court of Washington, En Banc.
Argued February 17, 2000.
Decided June 15, 2000.
*1168 Velikanje, Moore & Shore, John Jay Carroll, Yakima, for Petitioner.
Murray, Dunham & Murray, Jeffory Emerson Adams, Ronald Lewis Unger, Seattle, for Respondent.
Gordon & Polscer, Joseph D. Hampton, Keating Bucklin & McCormack, Stewart Andrew Estes, Seattle, David A. Kulisch, Spokane, for Amicus Curiae on behalf of Washington Defense Trial Lawyers.
Bryan P. Harnetiaux, Debra Stephens, Spokane, for Amicus Curiae on behalf of Washington State Trial Lawyers Association.
Pamela A. Okano, Seattle, for Amicus Curiae on behalf of National Association of Independent Insurers and Allstate Insurance Company.
IRELAND, J.
Hayden Farms seeks review of the summary judgment dismissal of its suit against the Mutual of Enumclaw Insurance Company (MOE) for recovery of insurance benefits and breach of the duty to defend. We hold that the duty to defend was properly denied based on the policy's "loss of use" exclusion; thus, the Court of Appeals' decision is affirmed.

I.

Facts
Hayden Farms planted rootstock in the spring of 1988 intending to graft scion wood (a tree branch with several buds from a particular species of fruit tree) onto the stock to create a variety of fruit trees. Clerk's Papers (CP) at 92.[1] In November, Hayden Farms hired James Krause, a self-proclaimed grafting expert, to perform the grafting in the spring of 1989. Both Krause and Hayden Farms provided the scion wood to be used.
The grafting was postponed until September 1989, however, because the buds were damaged while in Krause's care. New scion wood was provided by both Krause and Hayden Farms. When Krause finally performed the grafting, less than 10 percent of the grafts were successful. Krause accepted the blame, attributing the failure to a new type of tape he used.
*1169 Krause agreed to try grafting again in the spring of 1990. Again, both Krause and Hayden Farms provided new scion wood. The grafting was again postponed, however, because Krause improperly stored the scion wood. Notably, the rootstock remained undamaged.
Fed up, Hayden Farms hired someone else to perform the grafting in the fall of 1990; this time nearly all of the new grafts were successful. Hayden Farms subsequently sued Krause for breach of contract and negligence.
The relevant portion of Hayden Farms' complaint states:
In the spring of 1988, [Hayden Farms] planted approximately 22 acres of Julian rootstocks for the purpose of budding and/or grafting over onto such trees or rootstocks certain highly desirable varieties of plums, peaches and nectarines. [Hayden Farms] contacted defendant James Krause for the purpose of having him perform the necessary budding or grafting;.... In the spring of 1989, the bud wood to be used apparently froze, and Mr. Krause stated he could bud in August. Mr. Krause did not do the work until the end of September, 1989, and, in doing so, either improperly performed the budding or used improper materials or both. The buds loosened without fault on the part of plaintiffs, and did not take. Mr. Krause then advised he would collect additional scion wood and perform grafting to the trees in the spring of 1990. Although [Hayden Farms] attempted to get Mr. Krause to do the grafting work, he failed to comply, asserting that the graft wood did not store, that it was his fault, and he would do the work in the fall of 1990. [Hayden Farms], having sustained a substantial crop loss by reason of the delays occasioned by the default on the part of defendant Krause, and having reason to believe that Mr. Krause will not satisfactorily perform or respond in damages to [Hayden Farms], have determined that other procedures will be followed.
CP at 239-40 (emphasis added). The complaint further states that "By reason of the fault of defendant James Krause, ... [Hayden Farms has] sustained substantial damages.... [Krause's] conduct constitutes breach of contract and negligence." CP at 240.
Krause tendered defense of the suit to MOE through which Krause had a comprehensive general liability (CGL) policy. Under the policy, MOE agreed to indemnify Krause for all damages that he becomes legally obligated to pay because of "PROPERTY DAMAGE to which this insurance applies, caused by an OCCURRENCE." CP at 122.
Under the policy, "property damage" and "occurrence" are defined as follows:
"Property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
"Occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.
CP at 262 (emphasis added). "Accident" is not defined in the policy. MOE declined Krause's tender of defense citing exclusions (g)(6) and (7). These exclusions, better known as the "insured's work/product" exclusions, exclude "property damage" that is limited to the insured's own work or product. See CP at 122.
In a subsequent settlement agreement between Hayden Farms and Krause, Krause assigned his rights against MOE to Hayden Farms. When MOE refused to pay the settlement amount, nearly $500,000, Hayden Farms sued for declaration of coverage and damages for MOE's breach of its duty to defend. MOE counter-claimed for declaration of no coverage and a finding that the settlement agreement was unreasonable. Both sides moved for summary judgment.
At summary judgment, MOE raised additional bases for supporting its denial of coverage and its duty to defend, including policy *1170 exclusion (h). Exclusion (h), commonly referred to as the "loss of use" exclusion, provides that the policy does not apply to
loss of use of tangible property which has not been physically injured or destroyed resulting from (1) a delay in or lack of performance by or on behalf of [Krause] of any contract or agreement, or (2) the failure of [Krause's product] or work performed by or on behalf of [Krause] to meet the level of performance, quality, fitness or durability warranted or represented by [Krause] but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of [Krause's products] or work performed by or on behalf of [Krause] after such products or work have been put to use by any person or organization other than [Krause].
CP at 280. The trial court granted MOE's motion and dismissed the suit.
On appeal, Hayden Farms claimed that, in an action alleging breach of an insurer's duty to defend, insurance regulation WAC 284-30-380 precludes an insurer from relying on grounds not stated in its initial denial letter. Br. of Appellants at 15. The Court of Appeals, however, rejected this argument finding that WAC 284-30-380 was not violated and that preclusion is improper absent prejudice. The Court of Appeals further found that the "loss of use" exclusion clearly supported MOE's denial of its duty to defend, relying partly on a portion of Hayden Farm's deposition testimony admitting that the rootstock was not damaged, and that its claims were merely economic and based only on the delays in production caused by Krause's poor work. Hayden Farms v. Mutual of Enumclaw Ins. Co., 95 Wash.App. 563, 567-68, 977 P.2d 608 (1999). In its petition to this court, Hayden Farms argues that the Court of Appeals, among other things, erred in relying upon the deposition testimony to find that MOE properly refused to defend Krause.

II.

Summary of Issues
The key issues in this case are (1) whether WAC 284-30-380 precludes an insurer from raising additional grounds for avoiding its duty to defend beyond those raised in its initial denial letter; (2) whether the complaint's allegations clearly fell within the policy's general coverage provisions and/or were unambiguously barred by any exclusions; and (3) whether an insurer may rely on extrinsic facts to avoid its duty to defend. We hold that MOE was not precluded from raising additional defenses and that, even without relying on extrinsic evidence, the "loss of use" exclusion clearly supported MOE's denial of its duty to defend.

III.

Analysis

A.

WAC 284-30-380
Hayden Farms argues that WAC 284-30-380,[2] which requires insurers to specify the grounds for denying a claim in their written denial, precluded MOE from raising additional grounds for denial beyond those cited in its initial letter. Br. of Appellants at 15. Hayden Farms asserts that WAC 284-30-380's preclusive effect applies regardless of whether there was prejudice to the insurer or whether the insured acted in bad faith. See Suppl. Br. of Pet'r at 9-13.
The Court of Appeals disagreed finding that the regulation was not violated based on subsection (2) and that preclusion was inappropriate absent prejudice. See Hayden, 95 Wash.App. at 567-68, 977 P.2d 608. We *1171 agree with the Court of Appeals, but only in so far as we find that WAC 284-30-380 does not have a preclusive effect and that preclusion or estoppel is inappropriate absent either prejudice or bad faith.
Under the Consumer Protection Act (CPA), individuals are vested with a private cause of action against insurers for unfair or deceptive practices. Industrial Indem. Co. of the N.W., Inc. v. Kallevig, 114 Wash.2d 907, 920, 792 P.2d 520, 7 A.L.R.5th 1014 (1990) (citing RCW 19.86.090). Individuals bringing such actions must show (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) that impacts the public interest; (4) which causes injury to the party in his business or property; and (5) which injury is causally linked to the unfair or deceptive act. Kallevig, 114 Wash.2d at 920, 792 P.2d 520 (citing case). One way the first two elements can be satisfied is by establishing a violation of WAC 284-30. See Kallevig, 114 Wash.2d at 923, 792 P.2d 520 ("A violation of WAC 284-30-330 constitutes a violation of RCW 48.30.010(1), which in turn constitutes a per se unfair trade practice by virtue of the legislative declaration in RCW 19.86.170."); accord Van Noy v. State Farm Mut. Auto. Ins., 98 Wash.App. 487, 496, 983 P.2d 1129 (1999) (first two elements of CPA claim satisfied by showing alleged act constituted per se unfair trade practice). Consequently, the regulations within WAC 284-30 do not, in and of themselves, create causes of action and require an attendant CPA claim to be given effect.
However, even if Hayden Farms had asserted a successful CPA claim utilizing WAC 284-30-380, it would not have received the requested remedy. The specified remedies are: actual damages; fines and penalties; cease and desist orders; and the denial, suspension or revocation of an insurer's license. Preclusion and estoppel are conspicuously absent from the list. See WAC 284-30-400; RCW 19.86.090, .140; RCW 48.05.140(1); RCW 48.30.010. Their absence is determinative because, as the CPA explicitly dictates, "no penalty or remedy shall result from a violation of this chapter except as expressly provided herein." RCW 19.86.170.
Having shown that WAC 284-30-380 does not have a preclusive effect, Hayden Farms is left relying on traditional forms of estoppel available in insurance cases. Under these forms of estoppel, insureds must demonstrate that they either suffered prejudice or the insurer acted in bad faith when the insurer failed to raise all its grounds for denial in its initial denial letter. Bosko v. Pitts & Still, Inc., 75 Wash.2d 856, 864, 454 P.2d 229 (1969) (traditional equitable estoppel requires prejudice) (citing cases); Kirk v. Mt. Airy Ins. Co., 134 Wash.2d 558, 563-65, 951 P.2d 1124 (1998) (insurance bad faith estoppel, as the name implies, requires bad faith denial by insured). Hayden Farms, however, failed to allege either prejudice or bad faith and, thus, neither of these forms of estoppel apply.
Consequently, while the basis of our decision may differ, we affirm the Court of Appeals' ultimate conclusion that MOE was not precluded from raising additional defenses on summary judgment. We next turn to the issue of whether MOE properly denied its duty to defend Krause.

B.

Duty to Defend
When reviewing an order of summary judgment, this court engages in de novo review. E.g., Stuart v. American States Ins. Co., 134 Wash.2d 814, 818, 953 P.2d 462 (1998) (citing case). This court must determine whether, after reviewing all relevant pleadings and affidavits in favor of the nonmoving party, any genuine issue of material fact exists that prevents the moving party from being entitled to judgment as a matter of law. E.g., Stuart, 134 Wash.2d at 818, 953 P.2d 462 (citing CR 56(c)).
It is well settled that the duty to defend under a CGL policy is separate from, and broader than, the duty to indemnify. See, e.g., Holland Am. Ins. Co. v. National Indem. Co., 75 Wash.2d 909, 912-13, 454 P.2d 383 (1969). The duty to indemnify hinges on the insured's actual liability to the claimant and actual coverage under the policy. The duty to defend, on the other hand, exists *1172 merely if the complaint contains any factual allegations which could render the insurer liable to the insured under the policy. See, e.g., Holland America, 75 Wash.2d at 912-13, 454 P.2d 383. Consequently to determine whether the duty to defend exists, this court examines the policy's insuring provisions to see if the complaint's allegations are conceivably covered. If covered, this court must then determine whether an exclusion clearly and unambiguously applies to bar coverage. See Diamaco, Inc. v. Aetna Cas. & Sur. Co., 97 Wash.App. 335, 338-44, 983 P.2d 707 (1999).
Policies are interpreted as they would be by the average purchaser. See Roller v. Stonewall Ins. Co., 115 Wash.2d 679, 682-83, 801 P.2d 207 (1990) (interpret from view of average purchaser) (citing case). Policy ambiguities, particularly with respect to exclusions, are to be strictly construed against the insurer. Diamaco, 97 Wash.App. at 342, 983 P.2d 707 (rule that policy provisions are construed against insurer applies with added force regarding exclusions) (citing case). Despite these general rules favoring the insured, however, one overriding principle governs this case: CGL policy holders like Krause have purchased a general liability policy, not "a performance bond, product liability insurance, or malpractice insurance." Aetna Cas. & Sur. Co. v. M & S Indus., Inc., 64 Wash.App. 916, 921, 827 P.2d 321 (1992) (citing case); see also Reliance Ins. Co. v. Mogavero, 640 F.Supp. 84, 85 (D.Md.1986) ("overriding principle" in poor workmanship case was that insurer "issued a general liability policy, not a performance bond").
MOE relies on both the policy's insuring provisions and exclusions to support its decision not to defend. However, we need not decide these other coverage issues based on our finding that the "loss of use" exclusion clearly and unambiguously barred coverage. See Minnick's, Inc. v. Reliance Ins. Co., 47 Md.App. 329, 422 A.2d 1028, (1980) (fact that exclusion applied negated need for further discussion); see also Diamond State Ins. Co. v. Chester-Jensen Co. 243 Ill.App.3d 471, 611 N.E.2d 1083, 1092, 183 Ill.Dec. 435 (1993) (liability which falls within policy's insuring provisions may be specifically removed from such coverage by exclusion) (citing case).

C.

The "Loss of Work" Exclusion
Hayden Farms argues that the Court of Appeals erred in applying exclusion (h), the "loss of use" exclusion. While Hayden Farms concedes that there was a "loss of use of tangible property," it argues that such loss of use did not result from "a delay in or lack of performance by or on behalf of [Krause] of any contract or agreement." See CP at 280; see also Pet. for Review at 15. Hayden Farms asserts that the loss of use of the rootstock did not result in Krause's delay, but rather in delayed rootstock production. Pet. for Review at 15 (failing to cite supporting authority). We find Hayden Farms' argument unpersuasive and that "loss of use" exclusion clearly applied based on subsection (2).
The "loss of use" exclusion applies to claims arising out of the loss of use of tangible property, which has not been physically injured, resulting from either the insured's delayed performance of a contract, or an insured's faulty performance of that contract. See M & S Indus., 64 Wash.App. at 926, 827 P.2d 321; accord Milgard Mfg., Inc. v. Continental Ins. Co., 92 Or.App. 609, 759 P.2d 1111 (1988). This exclusion helps distinguish between that which is covered under the policy, i.e., the physical breakdown of the insured's product that results in some type of injury to person or property, and that which is not covered, i.e., the mere failure of the product to perform as well as warranted. This is true because "`presumably [] the latter is a typical business risk whereas the former is more likely to have catastrophic consequences.'" Sterilite Corp. v. Continental Cas. Co., 17 Mass.App.Ct. 316, 458 N.E.2d 338, (1984) (quoting Honeycomb Sys., Inc. v. Admiral Ins. Co., 567 F.Supp. 1400, 1407 (D.Me.1983)).[3]
*1173 Hayden Farms' argument conveniently ignores subsection (2) of the exclusion in its entirety. Subsection (2) specifically states that the policy does not apply to
loss of use of tangible property which has not been physically injured or destroyed resulting from ... (2) the failure of [Krause's product] or work performed by or on behalf of [Krause] to meet the level of performance, quality, fitness or durability warranted or represented by [Krause]....
CP at 280. Subsection (2) clearly bars coverage in this case and supports MOE's denial of its duty to defend.
The gravamen of Hayden Farms' complaint is the failure of either Krause's grafts or grafting work to live up to the parties' expectations. The complaint does not assert that there was any physical injury to the tangible property that would render the exclusion inapplicable under either the exclusion's general language or its exception for "sudden and accidental physical injury." To provide coverage here would transform Krause's CGL policy into a performance bond or malpractice insurance and "substantially expand [MOE's] obligations under the policy beyond those reasonably contemplated by the parties." Mogavero, 640 F.Supp. at 87. Consequently, we hold that, even without the deposition testimony, the "loss of use" exclusion clearly and unambiguously excludes coverage for Hayden Farms' claims and supports MOE's denial of its duty to defend. See generally Diamaco, 97 Wash.App. at 337, 983 P.2d 707. Our holding is consistent with foreign jurisdictions that have applied the "loss of use" exclusion under analogous circumstances.[4]

D.

Extrinsic Evidence
Hayden Farms argues that the Court of Appeals erred in relying on the deposition testimony because such extrinsic evidence can only be used to invoke, not avoid, a duty to defend. Reply Br. of Appellants at 3-4; Suppl. Br. of Pet'r at 5. While MOE recognizes that the general rule against relying on extrinsic evidence to avoid a duty to defend, it urges this court to carve out an exception. However, based on our finding that the duty to defend clearly does not exist based on the complaint alone and without considering extrinsic evidence, we decline to address this issue. "`Principles of judicial restraint dictate that if resolution of an issue effectively disposes of a case, we should resolve the case on that basis without reaching any other issues that might be presented.'" State v. Peterson, 133 Wash.2d 885, 894, 948 P.2d 381 (1997) (Talmadge, J., concurring) (quoting Manning v. Upjohn Co., 862 F.2d 545, 547 (5th Cir.1989)); see also Adman Prods. Co. v. Federal Ins. Co., 187 Ill.App.3d 322, 134 Ill. Dec. 936, 543 N.E.2d 219, 220-21 (1989) (court avoided extrinsic evidence issue because coverage excluded under complaint's *1174 allegations, even without reference to extrinsic evidence).

IV.

Conclusion
In sum, we hold that MOE was not precluded from raising additional defenses not cited in its initial denial letter and that, even absent extrinsic evidence, MOE properly denied its duty to defend based on the "loss of use" exclusion. The Court of Appeals' decision is affirmed.
GUY, C.J., SMITH, JOHNSON, MADSEN, ALEXANDER, TALMADGE, SANDERS, and BRIDGE, JJ., concur.
NOTES
[1] The grafting process, also called "chip budding," involves obtaining scion wood when the buds are dormant. The scion wood is stored in cold temperatures to prevent the buds from breaking dormancy before they are grafted onto the rootstock. When grafting, a special type of tape holds the scion in place until the grafting is completed. See CP at 87-106.
[2] The relevant portion of WAC 284-30-380, titled "Standards for prompt, fair and equitable settlements applicable to all insurers," provides that

(1) Within fifteen working days after receipt by the insurer of properly executed proofs of loss, the first party claimant shall be advised of the acceptance or denial of the claim by the insurer. No insurer shall deny a claim on the grounds of a specific policy provision, condition, or exclusion unless reference to such provision, condition, or exclusion is included in the denial....
(2) If a claim is denied for reasons other than those described in subsection (1) and is made by any other means than writing, an appropriate notation shall be made in the claim file of the insurer.
[3] Honeycomb restates an excellent illustration of the distinction:

"A boiler sold and installed by the insured in a manufacturing plant fails to heat a quantity of water to the specified temperature, and the plant's capacity is thereby reduced. There would be no coverage for the resulting loss. However, if the boiler suddenly and accidentally breaks down, or explodes, without causing physical damage to other property, the loss of use of the plant would be covered."
567 F.Supp. at 1407 (quoting Defense Research Institute, Annotated Comprehensive General Liability Insurance Policy 50 (1979)).
[4] See Sting Sec., Inc. v. First Mercury Syndicate, Inc., 791 F.Supp. 555, 562-63 (D.Md.1992) (alleged loss of production and profits caused by failure of insured's product, a security management system, to work as warranted excluded under "loss of use" exclusion); American Motorists Ins. Co. v. Trane Co., 544 F.Supp. 669, 688 (W.D.Wis.1982) (shortfall in natural gas liquefaction plant production caused by failure of insured's product, a heat exchanger for liquefaction of natural gas, covered by "loss of use" exclusion); Chester-Jensen, 183 Ill.Dec. 435, 611 N.E.2d at 1092-93 (claims for economic losses resulting from diminished productivity caused by failure of insured's air conditioning system fell under "loss of use" exclusion, titled "named products exclusion" by court); Kyllo v. Northland Chem. Co., 209 N.W.2d 629, 632-35, 91 A.L.R.3d 913 (N.D.1973) (under analogous exclusion, loss of pinto bean crop due to poor performance of insured's weed spray excluded because spray "merely failed to work as expected" and crop not physically harmed). But see Western Cas. & Sur. Co. v. Budrus, 112 Wis.2d 348, 332 N.W.2d 837, 840 (1983) ("loss of use" exclusion did not apply to action against insured for negligently selling mistagged seed which resulted in crop loss because product delivered went beyond merely failing to meet represented level of performance).