[No. 25766-1-II.  Division Two.  February 2, 2001.]

SCOTTSDALE INSURANCE COMPANY, *Appellant*, v. INTERNATIONAL PROTECTIVE AGENCY, INC., ET AL., *Respondents*.

*Jerret E. Sale* (of *Bullivant Houser Bailey*), for appellant.

*John R. Christensen* (of *Messina Law Firm*), for respondents.

HOUGHTON, J. — Scottsdale Insurance Company (Scottsdale) appeals a denial of its summary judgment motion. Scottsdale sought a declaratory judgment that it had no duty to defend or indemnify International Protective Agency, Inc. (IPA), its insured, against claims that IPA's negligence and breach of its security contract resulted in Northwest Visions of University Place (Northwest Visions) losing its liquor license and business. Because the record is

devoid of evidence of loss of use of tangible property, we reverse and remand.

## FACTS

Scottsdale insured IPA under a commercial lines insurance policy. The policy, under a specific endorsement for security and patrol agencies, provides coverage for sums that IPA would be legally obligated to pay because of "any negligent act, error or omission [committed by IPA or any person for whom they were legally responsible] which results in . . . 'property damage' committed during the policy period[.]" Clerk's Papers at 36. The policy also provides that Scottsdale would have the duty to defend any lawsuit seeking those sums.

The policy defines property damage as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Clerk's Papers at 50. In addition, the policy requires that an "occurrence" cause the property damage. Clerk's Papers at 39. According to the policy, " '[o]ccurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Clerk's Papers at 49.

IPA provided security services at a restaurant Northwest Visions owned and operated called Cheers West. Under the service contract, IPA agreed to be responsible for crowd control and safeguarding of property within the restaurant and parking area. In particular, the security contract provided that:

> IPA, Inc. agrees to indemnify and save harmless Jamie's Investments, Inc.,[1] its management, and employees against

---

[1] Northwest Visions was the successor-in-interest to Jamie's Investments, Inc.

any and all claims, including claims for reasonable legal costs, fees and expenses for injury to persons or property damage . . . resulting directly or indirectly from any act, incident or accident occurring in, upon or about Cheers West as a result of acts, errors or omissions of IPA, Inc. or its employees resulting from the performance of this agreement.

Clerk's Papers at 16.

Northwest Visions and its on-site manager, Michael Oleson, sued IPA under theories of negligence and breach of contract, alleging that IPA's services included "checking and policing customers, so that minors were not admitted to the premises[.]" Clerk's Papers at 13. The lawsuit claims that a minor gained admission and that, consequently, Northwest Visions lost its liquor license, thereby "destroying the business of Cheers West and causing great economic loss to it and its manager, Michael Oleson." Clerk's Papers at 14.

IPA tendered its defense to its insurer, Scottsdale, which agreed in May 1995 to defend the action unless it determined during its investigation there was no coverage. Scottsdale noted that breach of contract was not covered because it was not included in the definition of an occurrence. In August 1996, Scottsdale told IPA that the insurance policy did not require Scottsdale to defend or indemnify IPA on the basis that Northwest Visions and Oleson had not claimed any property damage. Northwest Visions and Oleson amended their complaint adding Scottsdale as a defendant for wrongfully and unlawfully denying insurance coverage to IPA but left their other allegations unchanged.

Scottsdale then brought a separate action against Northwest Visions, Oleson, and IPA,[2] seeking "a declaration that it [had] no duty to defend or indemnify IPA under the policy for the claims asserted in the lawsuit by Northwest Visions and Oleson against IPA." Clerk's Papers at 5. The trial court denied Scottsdale's summary judgment motion and Scottsdale appeals.

---

[2] Scottsdale obtained a default judgment against IPA, which is not a party to this appeal. Apparently IPA is now defunct.

## ANALYSIS

### Standard of Review

█ In reviewing an appeal from a summary judgment, the reviewing court is in the same position as the trial court.

> On appeal of summary judgment, the standard of review is de novo, and the appellate court performs the same inquiry as the trial court. *Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 197-98, 943 P.2d 286 (1997). When ruling on a summary judgment motion, the court is to view all facts and reasonable inferences therefrom most favorably toward the nonmoving party. *Weyerhaeuser Co. v. Aetna Cas. & Sur. Co.*, 123 Wn.2d 891, 897, 874 P.2d 142 (1994). A court may grant summary judgment if the pleadings, affidavits, and depositions establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Ruff v. King County*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995); *see also* CR 56(c).

*Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000).

### Duty to Defend

██ Scottsdale's duty to defend IPA exists if the "complaint contains any factual allegations which could render the insurer liable to the insured under the policy." *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64, 1 P.3d 1167 (2000). We liberally construe the pleadings in favor of the insured. *Prudential Prop. & Cas. Ins. Co. v. Lawrence*, 45 Wn. App. 111, 115, 724 P.2d 418 (1986). " 'The key consideration in determining whether the duty to defend has been invoked is whether the allegation, if proven true, would render [the insurer] liable to pay out on the policy.' " *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 561, 951 P.2d 1124 (1998) (alteration in original) (quoting *Farmers Ins. Co. v. Romas*, 88 Wn. App. 801, 808, 947 P.2d 754 (1997), *review denied*, 135 Wn.2d 1007 (1998)). Scottsdale's duty to indemnify

depends upon "the insured's actual liability to the claimant and actual coverage under the policy." *Hayden*, 141 Wn.2d at 64.[3]

We begin our analysis by examining the policy's provisions to see if the complaint's allegations are conceivably covered. *Hayden*, 141 Wn.2d at 64.

> Policies are interpreted as they would be by the average purchaser. *See Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 682-83, 801 P.2d 207 (1990) (interpret from view of average purchaser) (citing case). Policy ambiguities, particularly with respect to exclusions, are to be strictly construed against the insurer. *Diamaco[, Inc. v. Aetna Cas. & Sur. Co.*, 97 Wn. App. 335, 342, 983 P.2d 707 (1999)] (rule that policy provisions are construed against insurer applies with added force regarding exclusions)[, *review denied*, 140 Wn.2d 1013 (2000)].

*Hayden*, 141 Wn.2d at 64. If the allegations are conceivably covered, the court must determine whether a policy exclusion clearly and unambiguously applies to bar coverage. Where an exclusion clearly and unambiguously applies to bar coverage, the court's inquiry ends. *Hayden*, 141 Wn.2d at 65 (citing *Minnick's, Inc. v. Reliance Ins. Co.*, 47 Md. App. 329, 422 A.2d 1028 (1980) (fact that exclusion applied negated need for further discussion); *see also Diamond State Ins. Co. v. Chester-Jensen Co.*, 243 Ill. App. 3d 471, 611 N.E.2d 1083, 1092 (1993)).

Here, the complaint does not allege loss of use of *tangible* property. "[T]angible property" may fairly be defined as property "that has physical form and substance . . . [, t]hat which may be felt or touched, and is necessarily corporeal[.]" BLACK'S LAW DICTIONARY 1456 (6th ed. 1990). A liquor license is merely representative of a privilege granted by the state and, as such, is intangible property. *See, e.g.*, RCW 84.36.070(2)(c) (license is intangible property for tax purposes). A "business" is likewise intangible for it merely describes a "commercial activity

---

[3] Northwest Visions and Oleson assert that the issue of Scottsdale's duty to indemnify was not before the trial court and is not properly before us. We disagree as Scottsdale sought a declaration that it had no duty to defend *or* indemnify.

engaged in for gain or livelihood." BLACK'S LAW DICTIONARY 198 (6th ed. 1990); *see also Nova Cas. Co. v. Able Constr., Inc.*, 1999 UT 69, 983 P.2d 575, 580-81 (loss of use of house for intended business venture not loss of use of tangible property and loss of business not property damage because pure economic loss) (citing *Safeco Ins. Co. of Am. v. Andrews*, 915 F.2d 500, 502 (9th Cir. 1990)). The complaint alleges that Northwest Visions lost its *liquor license* thereby destroying its *business*. There is no allegation or evidence in the record that Northwest Visions lost its use of or right to occupy the premises.[4] Even if it had, a right to occupy premises is not a tangible property interest. *See, e.g., Neuman v. Travelers Indem. Co.*, 271 Md. 636, 319 A.2d 522, 531 (1974) (loss of right to occupy premises for remainder of term is intangible right). Nor is there any allegation that Oleson, its manager, suffered property damage within the definition of the policy.

Thus, the trial court erred when it denied Scottsdale's summary judgment motion. Scottsdale correctly argues that there was no property damage within the meaning of the policy because the complaint does not allege that Northwest Visions or Oleson lost the use of the premises or building for "any purpose, as owner or lessee, other than one that involves the sale of liquor." Br. of Appellant at 6. The trial court should have concluded that Scottsdale had no duty to defend or indemnify IPA against the complaint. *Cf. United Pac. Ins. Co. v. Van's Westlake Union, Inc.*, 34 Wn. App. 708, 664 P.2d 1262 (closure of businesses near gasoline spill are losses contemplated under relevant definition of property damage), *review denied*, 100 Wn.2d 1018 (1983).[5]

---

[4] Accordingly, assertions such that Northwest Visions "lost the privilege or benefit of using tangible property", Br. of Resp't at 15, are unsupported by the record.

[5] In its reply brief Scottsdale asserts that IPA's failure to perform the terms of the contract cannot fairly be characterized as a sudden and accidental breakdown. The parties do not address whether IPA's failure to check the identification of a minor is an occurrence within the meaning of the policy, and the issue is not properly before us. RAP 2.5(a).

Reversed and remanded for entry of judgment dismissing Northwest Vision's and Oleson's claims.

HUNT, A.C.J., and MORGAN, J., concur.

