IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32696-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JONATHAN EDWARD KUHLMAN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — A jury convicted Jonathan Kuhlman of rape in the second degree,

two counts of distribution of a controlled substance to a minor with sexual motivation,

and communication with a minor for immoral purposes. On appeal, Kuhlman challenges

the length of his sentence. In particular, he objects to the trial court's use of sexual

motivation sentence enhancements to increase the length of his sentence. We reject

Kuhlman's contentions. We also affirm the trial court's imposition of legal financial

obligations.

## FACTS

Charges against Jonathan Kuhlman arise from his unnerving contact with two

underage girls in Benton City. In October 2012, Kuhlman, then age forty, began communications on Facebook with Amelia, then age fourteen. Amelia is a fictitious name. Amelia was a freshman at Kiona-Benton High School in Benton City. Amelia told Kuhlman that she was sixteen.

In his messages, Jonathan Kuhlman encouraged Amelia to skip school and smoke marijuana with him. On October 22, 2012, Kuhlman arranged to meet Amelia before school and smoke marijuana. Kuhlman retrieved Amelia as she walked toward high school. As Kuhlman drove Amelia toward an orchard, he loaded a pipe with marijuana, handed the pipe to Amelia, and told her "to take a hit." 1 Report of Proceeding (RP) at 185. The two smoked marijuana from the pipe during the short trip to the orchard. During the drive, Amelia informed Kuhlman that she was fourteen years old.

As the two parked in the orchard, Jonathan Kuhlman lowered his pants to his knees, grabbed the back of Amelia's head, and plunged her head toward his penis. Amelia pulled her head back. Kuhlman then placed his hands inside Amelia's shirt. Amelia removed Kuhlman's hand and insisted that he cease touching her. Kuhlman next deposited his hand in Amelia's shorts. He massaged Amelia's pubic region and inserted his fingers inside her vagina. Amelia again insisted that Kuhlman stop and declared her intention to leave. She shoved Kuhlman and ran toward school. As she fled, Kuhlman yelled to Amelia to keep silent about his conduct.

2

In July 2013, Jonathan Kuhlman met Bertha, then age fifteen. Bertha is an invented name. Bertha was then between her freshman and sophomore years of high school at Kiona-Benton High School in Benton City. Kuhlman gave Bertha a ride home and inserted his phone number into her phone. On July 19, 2013, Bertha sent Kuhlman text messages from a friend's phone. Kuhlman and Bertha added each other to their respective Facebook pages.

As the texting continued, Bertha told Jonathan Kuhlman that she was sixteen years of age. Kuhlman asked Bertha when she last engaged in sex and whether she considered a "blow job" sex. 1 RP at 121. Kuhlman opined that Bertha was bisexual and described bisexuality as "hot." 1 RP at 121. When Bertha responded that she last engaged in sex on June 28, Kuhlman replied: "sounds like too long. You don't have a steady booty call." 1 RP at 121. The textative Kuhlman added: "[m]ust not been any good, huh?" followed by "[w]ell, if it's been a month, shit I got to have it four or five times a week." 1 RP at 122. Bertha texted: "So I take it you're good." 1 RP at 123. Kuhlman responded "Yeah" and "Well, one way to find out." 1 RP at 123.

Bertha and Jonathan Kuhlman arranged by Facebook to meet. Kuhlman retrieved Bertha from summer school and drove her to an orchard. Kuhlman yanked down his pants and asked her for oral sex. Bertha complied and then engaged in vaginal sex with Kuhlman. At the end of the encounter, Kuhlman handed Bertha a bag of marijuana and

3

returned her to school.

## PROCEDURE

In its second amended information, the State of Washington charged Jonathan Kuhlman with five crimes: (1) one count of rape in the second degree of Amelia, (2) in the alternative to count one, rape of a child in the third degree of Amelia, (3) distribution of a controlled substance to a person under the age of eighteen with sexual motivation with regard to Amelia, (4) distribution of a controlled substance to a person under the age of eighteen with sexual motivation with regard to Bertha, and (5) one count of communication with a minor for immoral purposes with regard to Bertha.

The jury found Jonathan Kuhlman guilty of rape in the second degree, which verdict mooted the third degree rape charge. The jury also found Kuhlman guilty on the three remaining charges, two counts of distribution of a controlled substance to a person under the age of eighteen with sexual motivation and one count of communication with a minor for immoral purposes.

The State of Tennessee previously convicted Jonathan Kuhlman of five crimes. Washington State earlier convicted Kuhlman of three crimes. At sentencing, the State argued that Jonathan Kuhlman had an offender score of fourteen for the second degree rape conviction with a standard range of 210-280 months. The State contended that Kuhlman sustained a score of eleven for each conviction for distribution of a controlled

substance to a person under the age of eighteen, with a standard range of 100 to 120 months each. Finally, the State maintained that Kuhlman merited an offender score of fourteen for the communication with a minor conviction, with a standard range of 51 to 60 months.

The State also contended that Jonathan Kuhlman's convictions for distribution of a controlled substance to a minor constituted sex offenses due to the sexual motivation enhancement. The State therefore sought to impose sexual motivation enhancements of eighteen months' additional confinement for each conviction, or thirty-six months total. In the end, the State argued that the statutory minimum amount of time that Kuhlman must serve in this case is 246 months, 210 months for count I, plus 36 months for the sexual motivation enhancements.

Jonathan Kuhlman objected to the State's calculation of his offender score. He argued that the court should not increase the number of points for the distribution charges, nor add thirty-six months for the same sentence enhancement. Kuhlman argued "that's essentially a double whammy." Verbatim Report of Proceedings (VRP) (Aug. 5, 2014) 15.

Because Jonathan Kuhlman challenges his legal financial obligations, we also review the facts and procedure relating to the imposition of the obligations. Prior to the sentencing decision, the trial court reviewed a presentence investigation report and

Kuhlman's criminal history. The presentence investigation report found:

> [w]ith his record of self-employment, it does not appear Mr.
> Kuhlman will have any barriers to obtaining future employment beyond his
> registration requirements and conditions of supervision. . . . He listed his
> current wage or salary of $80,000 a year from his lawn care business. And
> . . . he runs a marijuana depository/business for profit.

Clerk's Papgers (CP) at 98. The presentence investigation report also stated that

Kuhlman supports himself, his girlfriend, her two children, and their child in

common. The report disclosed that Kuhlman stated, during an interview, that he is

not subject to any child support order for a daughter, but, according to a personal

information questionnaire, an order demands he pay child support for his daughter

in the amount of $179 a month. He claims he actually pays a higher amount of

$350 monthly. Kuhlman denied receiving public assistance, disability payments,

financial assistance from family, unemployment, or any other income.

The presentence report did not list any monetary obligations of Jonathan

Kuhlman. The report declared that Kuhlman posted $30,000 bail, but the report

did not divulge whether Kuhlman paid $30,000 in cash or obtained a bail bond.

Throughout the criminal proceedings in superior court, Kuhlman retained private

counsel.

The trial court calculated Jonathan Kuhlman's offender score as nine plus and

sentenced Kuhlman to a minimum of 246 months' confinement as requested by the State.

The sentence represented the minimum sentence of 210 months for the crime with longest penalty, rape in the second degree, plus an additional thirty-six months for the sexual motivation enhancements attended to the two crimes of distribution of a controlled substance.

The trial court also imposed $1,956 in legal financial obligations, $1,156 of which were discretionary costs. The trial court did not check the box for the boilerplate finding that Kuhlman had the ability or likely future ability to pay his financial obligations. The trial court made no inquiry about Kuhlman's financial situation during sentencing. Kuhlman did not object to the trial court's imposition of legal financial obligations.

## LAW AND ANALYSIS

Jonathan Kuhlman challenges the length of his sentence and the trial court's imposition of legal financial obligations. We affirm the length of the sentence and decline to address Kuhlman's challenge to the financial obligations.

### Sexual Motivation Enhancement

Before addressing the major issue on appeal, we address the question of Jonathan Kuhlman's offender score. Kuhlman may complain that the trial court imposed an offender score of fourteen, instead of eleven, on the rape and communication with a minor for immoral purposes convictions. The trial court may have done so by counting

7

convictions for the distribution of controlled substances to a minor as three points because the charges were considered sexual crimes upon the jury's findings of sexual motivation. The State contends that the offender score is irrelevant since Kuhlman reached the maximum score of nine plus no matter whether the court imposes the three points.

We agree with the State's position that the dispute as to the offender score does not impact Jonathan Kuhlman's sentencing because his offender score is nine plus regardless. Therefore, we do not resolve the dispute. Principles of judicial restraint dictate that if resolution of another issue effectively disposes of a case, we should resolve the case on that basis without reaching the first issue presented. *Wash. State Farm Bureau Fed'n v. Gregoire*, 162 Wn.2d 284, 307, 174 P.3d 1142 (2007); *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 68, 1 P.3d 1167 (2000).

Although Jonathan Kuhlman advocates for a reduction in his offender score, we recharacterize his request as one to exclude the sexual motivation enhancements from lengthening his conviction for second degree rape. Kuhlman wishes to reduce his sentence from 246 months to 210 months by claiming the sexual motivation enhancements may not be added to a conviction for the sexual offense of rape. We disagree. We hold that the trial court must impose the enhancements to Kuhlman's conviction for rape because, by statute, the enhancements must be applied to all

8

convictions in the same prosecution.

The trial court bases a sentence imposed on a criminal defendant by the crime of conviction and an offender score established by applying RCW 9.94A.525, a section of the Sentencing Reform Act of 1981, ch. 9.94A RCW. The Washington Legislature has enacted numerous sentencing mandates, factors, and enhancements that increase the punishment meted on a convicted defendant after the trial court calculates a minimum sentence based on the offender score. One such enhancement is for sexual motivation when committing a crime. To that end, RCW 9.94A.535 reads:

> The court may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence.
>
> . . . .
>
> (3) Aggravating Circumstances—Considered by a Jury—Imposed by the Court
> Except for circumstances listed in subsection (2) of this section, the following circumstances are an exclusive list of factors that can support a sentence above the standard range.
>
> . . . .
>
> (f) *The current offense* included a finding of *sexual motivation* pursuant to RCW 9.94A.835.

(Emphasis added.) RCW 9.94A.030 defines "sexual motivation" as:

> (47) "Sexual motivation" means that one of the purposes for which the defendant committed the crime was for the purpose of his or her sexual gratification.

Not all crimes qualify for the sexual motivation enhancement. Under RCW

9

9.94A.535(3)(f), we determine if a crime meets eligibility for the enhancement by the

language of RCW 9.94A.835. The latter statute declares:

> (1) The prosecuting attorney shall file a special allegation of *sexual motivation* in every criminal case, felony, gross misdemeanor, or misdemeanor, *other than sex offenses as defined in RCW 9.94A.030* when sufficient admissible evidence exists, which, when considered with the most plausible, reasonably foreseeable defense that could be raised under the evidence, would justify a finding of sexual motivation by a reasonable and objective fact finder.
>
> (2) In a criminal case wherein there has been a special allegation the state shall prove beyond a reasonable doubt that the accused committed the crime with a sexual motivation. The court shall make a finding of fact of whether or not a sexual motivation was present at the time of the commission of the crime, or if a jury trial is had, the jury shall, if it finds the defendant guilty, also find a special verdict as to whether or not the defendant committed the crime with a sexual motivation. *This finding shall not be applied to sex offenses as defined in RCW 9.94A.030.*

(Emphasis added.)

Note that RCW 9.94A.835 exempts from the sexual motivation sentence

enhancement a "sex offense." This exemption makes sense because the crime is already

identified as being motivated, at least in part, by sexual desire. Sexual motivation is

already factored into the sex offense's sentence. If the enhancement applied, a

defendant's sentence would be impacted twice by his sexual intent, and the defendant

would suffer what Jonathan Kuhlman labels a "double whammy."

We look to RCW 9.94A.030 for a definition, under the Sentencing Reform Act, of

a "sex offense."

(46) "Sex offense" means:

(a)(i) *A felony that is a violation of chapter 9A.44 RCW* [*rape*, child molestation, indecent liberties, voyeurism] other than RCW 9A.44.132 [failing to register as sex offender];

(ii) A violation of RCW 9A.64.020 [incest];

(iii) A felony that is a violation of chapter 9.68A RCW [sexual exploitation of children, communication with a minor] other than RCW 9.68A.080;

(iv) A felony that is, under chapter 9A.28 RCW [anticipatory offenses], a criminal attempt, criminal solicitation, or criminal conspiracy to commit such crimes; or

(v) A felony violation of RCW 9A.44.132(1) (failure to register [as a sex offender]) if the person has been convicted of violating RCW 9A.44.132(1) (failure to register [as a sex offender]) [or 9A.44.130 prior to June 10, 2010,] on at least one prior occasion;

(b) Any conviction for a felony offense in effect at any time prior to July 1, 1976, that is comparable to a felony classified as a sex offense in (a) of this subsection;

*(c) A felony with a finding of sexual motivation under RCW 9.94A.835* or 13.40.135; or

(d) Any federal or out-of-state conviction for an offense that under the laws of this state would be a felony classified as a sex offense under (a) of this subsection.

(Emphasis added.) Rape should be considered more a crime of misogynistic violence and brutal control than of sex, but RCW 9.94A.030 reads to the contrary. A legal quandary arises from RCW 9.94A.030(46)(c) because the subsection encompasses in the definition of a "sex offense" a nonsex offense with a finding of sexual motivation and RCW 9.94A.835 exempts from the sexual motivation enhancement "sex offenses." We return to this statutory dilemma later.

RCW 9.94A.533 lists the additional months for sentence enhancements based on

11

various aggravating circumstances, including crimes with sexual motivation. The statute

declares that eighteen months shall be added for a finding of sexual motivation. More

importantly, the statute demands the trial court to add the enhancement to a sexual crime,

for which the court convicts the defendant of another crime that merits the sexual

motivation enhancement. RCW 9.94A.533 reads, in relevant part:

> (1) The provisions of this section apply to the standard sentence
> ranges determined by RCW 9.94A.510 or 9.94A.517.
>
> . . . .
>
> (8)(a) The following additional times shall be added to the standard
> sentence range for felony crimes committed on or after July 1, 2006, if the
> offense was committed *with sexual motivation*, as that term is defined in
> RCW 9.94A.030. *If the offender is being sentenced for more than one
> offense, the sexual motivation enhancement must be added to the total
> period of total confinement for all offenses, regardless of which underlying
> offense is subject to a sexual motivation enhancement.* . . .
>
> . . . .
>
> (ii) *Eighteen months* for any felony defined under any law as a class
> B felony or with a statutory maximum sentence of ten years, or both;
>
> . . . .
>
> (b) *Notwithstanding any other provision of law, all sexual
> motivation enhancements under this subsection are mandatory, shall be
> served in total confinement, and shall run consecutively to all other
> sentencing provisions, including other sexual motivation enhancements, for
> all offenses sentenced under this chapter.* . . .
>
> (c) The sexual motivation enhancements in this subsection apply to
> all felony crimes;

(Emphasis added.) The State convicted Jonathan Kuhlman with two crimes carrying a

sexual motivation enhancement rendering a total enhancement of thirty-six months.

Two of Jonathan Kuhlman's crimes fall within RCW 9.94A.030's categories of

12

sex crimes, rape in the second degree and communication with a minor for an immoral purpose. Our trial court added the sexual motivation sentence enhancements to the sentence for second degree rape, nonetheless. Under Jonathan Kuhlman's circumstances, one could conclude that the trial court in effect unlawfully imposed the sexual motivation enhancements on a sex crime, rape. Nevertheless, under RCW 9.94A.533(8)(a), if the offender is sentenced for more than one offense, the sexual motivation enhancement must be added to the period of total confinement for all offenses, regardless of which underlying offense is subject to a sexual motivation enhancement. The statute's plain language directs such an application. We also note that, at sentencing, the defendant is not simply sentenced disjointedly for discrete convictions, but sentenced in the aggregate for all convictions. In this light, the trial court did not impose the sexual motivation enhancements on Jonathan Kuhlman for a sex crime, but because of his other convictions for nonsex crimes that entailed sexual motivation.

We now return to our legislative conundrum. Jonathan Kuhlman argues that the trial court could not have added the sexual motivation sentence enhancement because of an ambiguity in RCW 9.94A.835. To repeat, under RCW 9.94A.535(3)(f), we determine if a crime qualifies for the enhancement by the language of RCW 9.94A.835. The latter statute declares that a finding of sexual motivation "shall not be applied to sex offenses as defined in RCW 9.94A.030." In turn, RCW 9.94A.030(46)(c) includes within "sex

13

offenses" "[a] felony with a finding of sexual motivation under RCW 9.94A.835." Thus, according to Kuhlman, a nonsex crime with a sexual motivation enhancement transforms into a sex crime, for which a sexual motivation enhancement may not be imposed. He requests that we strike the sexual motivation enhancements.

The State of Washington contends that an offense is not one with a finding of sexual motivation until after the finding is made such that a charge with a request for such a finding is not a sex crime at the charging stage. We do not address this argument because the appeal can be resolved on other grounds.

We recognize with Jonathan Kuhlman the inherent inconsistency resulting from a juxtaposition of RCW 9.94A.835 with RCW 9.94A.030(46)(c). We find this inconsistency more of a circular or nonsensical anomaly or a legislative drafting error than an ambiguity. Under the latter statute, one cannot receive a sexual motivation sentence enhancement if found guilty of a sexual offense. The former statute defines a sexual offense as including a felony in which the trier of fact finds a sexual motivation. If one reads the language of both statutes literally, there can never be a sexual motivation sentence enhancement, at least with felonies. Yet, the legislature particularly would wish the enhancement to apply to felonies.

Jonathan Kuhlman argues that RCW 9.94A.835, when read in light of RCW 9.94A.030(46)(c), is ambiguous, and he asks us to apply the rule of lenity. Kuhlman cites

14

*State v. Hennings*, 129 Wn.2d 512, 522, 919 P.2d 580 (1996), which reads:

> This oversight renders the section inconsistent with its own terms.
> As a result, the law is ambiguous and judicial interpretation is appropriate.

In *State v. Hennings*, the high court addressed legislation that allowed the imposition of restitution under two separate statutes, RCW 9.94A.140 and RCW 9.94A.142, up to one hundred and eighty days after sentencing. The act further provided that its terms were retroactive, but the retroactive provision referenced restitution only under RCW 9.94A.140. Restitution against both defendants on appeal was awardable only under RCW 9.94A.142. Our high court decided to insert the second restitution statute under the coverage of the retroactive section of the law so that the State's application for restitution was timely. The court considered the legislation to include an inadvertent omission. The court made no reference to the rule of lenity. The court holding harmed the defendants. Thus, *Hennings* does not support Jonathan Kuhlman's contention.

The State solves the inconsistency between the two statutes by arguing that RCW 9.94A.835 applies only to the prosecutor adding a charge of sexual motivation to another crime, whereas, RCW 9.94A.030 applies to findings of sexual motivation. In response, Jonathan Kuhlman argues that as soon as a sexual motivation allegation is made on a felony, it becomes a sex offense, but that the statute specifically disallows the State to add a sexual motivation allegation to a sex offense. We believe Kuhlman's reading of the

15

statutes to be the better reading. Nevertheless, we decline to accept Kuhlman's reading for other reasons.

Jonathan Kuhlman's interpretation of the two statutes would result in no sexual motivation enhancements, at least in felonies where one would expect the enhancements the most. Kuhlman's construction would render sexual motivation enhancements nugatory and would void the provisions of RCW 9.94A.533 and RCW 9.94A.535. Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous. *Citizens Alliance for Prop. Rights Legal Fund v. San Juan County*, 184 Wn.2d 428, 440, 359 P.3d 753 (2015); *G-P Gypsum Corp. v. Dep't of Revenue*, 169 Wn.2d 304, 309, 237 P.3d 256 (2010). The rule of lenity will be applied only if the defendant's proffered alternative interpretation is reasonable. *See State v. Tili*, 139 Wn.2d 107, 115, 985 P.2d 365 (1999). We find Kuhlman's reading unreasonable. We also believe that the legislature may have inserted the inconsistent language into RCW 9.94A.835 in order to ensure that the court does not apply the enhancement twice to a nonsex crime with a sexual motivation enhancement.

Legal Financial Obligations

Jonathan Kuhlman next contends that the trial court improperly required him to pay legal financial obligations without considering his financial resources under RCW 10.01.160(3). He challenges the discretionary costs imposed by the court consisting of a

16

a$60 sheriff service fee, $700 attorney fee, $146 witness fee, and $250 jury demand fee, for a total sum of $1,156. Kuhlman does not challenge mandatory financial obligations of a $500 victim assessment fee, $200 court costs, and a $100 DNA (deoxyribonucleic acid) collection fee.

Jonathan Kuhlman failed to object to the imposition of any legal financial obligations at sentencing. Nevertheless, he argues that he can still challenge the obligations for the first time on appeal, citing *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015). The State does not argue against appellate review, but instead contends that the trial court conducted the individualized inquiry required by *Blazina*. Whether we decline review or reach the merits of Kuhlman's assignment of error, the outcome remains the same. A presentence report showed that Kuhlman has the capability to pay the obligations.

RCW 10.01.160(3) provides:

> The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

Courts may impose legal financial obligations if a defendant has or will have the financial ability to pay them. RCW 10.01.160; RCW 9.94A.760(2); *State v. Curry*, 118 Wn.2d 911, 914-16, 829 P.2d 166 (1992).

17

In *State v. Blazina*, 182 Wn.2d at 831, 839 (2015), our Supreme Court clarified that RCW 10.01.160(3) requires a trial court do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry. Instead, the "record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay." *Blazina*, 182 Wn.2d at 838.

We must first decide whether to address this assignment of error since Jonathan Kuhlman did not object to the imposition of legal financial obligations at sentencing. RAP 2.5(a) provides, in relevant part: "The appellate court may refuse to review any claim of error which was not raised in the trial court." With regard to unpreserved challenges to financial obligations, our high court clarified: "A defendant who makes no objection to the imposition of discretionary [legal financial obligations] at sentencing is not automatically entitled to review." *Blazina*, 182 Wn.2d at 832. "Each appellate court must make its own decision to accept discretionary review." *Blazina*, 182 Wn.2d at 835.

As the State notes, the facts contained in the presentence investigation report comport with the requirements of *Blazina* by including an investigation of Jonathan Kuhlman's financial assets, income, and debts. The report stated that Kuhlman did not receive any public assistance. The report also identified Kuhlman's income as $80,000 per year. He posted bail and hired a private attorney.

Our trial court failed to check the box on Jonathan Kuhlman's judgment and

18

sentence, which box indicated Kuhlman had a present or future ability to pay legal financial obligations. Nevertheless, given the wealth of evidence attesting to Kuhlman's ability to pay and the trial court's statement on the record that it reviewed that information before imposing financial obligations, this omission does not warrant the court's review of the challenge.

## CONCLUSION

We affirm the trial court's sentence imposed on Jonathan Kuhlman, including the imposition of discretionary legal financial obligations.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.
_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.

19