# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | NO. 75529-3-I |
| | ) | |
| CURTIS GENE BROGI. | ) | DIVISION ONE |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | FILED: April 2, 2018 |

LEACH, J. — Curtis Brogi appeals the denial of his conditional release to a less restrictive alternative (LRA) as a sexually violent predator (SVP). He claims that he did not receive a fair trial because the State, through its psychologist expert witness, Dr. Harry Goldberg, introduced racial bias into the proceedings. We agree that the racial prejudice Goldberg's testimony introduced denied Brogi his federal and state constitutional due process guarantees to a fair trial. We reverse.

## FACTS

From 1986 to 1996, Brogi was convicted of multiple sex-related offenses. In January 2000, the State sought to have him committed as an SVP.[1] A jury found that Brogi was an SVP, and he was committed. He has since resided at the Special Commitment Center (SCC) in the custody of the Department of

---

[1] See ch. 71.09 RCW.

Social and Health Services. In 2015, Brogi petitioned for conditional release to an LRA. His LRA trial was in June 2016.

To deny a defendant conditional release to an LRA, the State must prove beyond a reasonable doubt that either the defendant's proposed LRA is not in his best interest or does not include conditions that would adequately protect the community.[2] At Brogi's trial, the jury could not agree about whether the State had proved that his proposed LRA plan was not in his best interest but unanimously found that his proposed plan did not contain conditions that would adequately protect the community. Consistent with this verdict, the trial court denied Brogi's conditional release to an LRA. Brogi appeals.

## ANALYSIS

Brogi asserts that the State's psychologist expert witness, Dr. Goldberg, implicated race as a risk factor the jury could use to predict his future dangerousness, which violated his federal and state constitutional due process rights to a fair trial. We review questions of law de novo.[3] We presume constitutional error is prejudicial unless the State proves that it was harmless beyond a reasonable doubt.[4]

---

[2] RCW 71.09.094(2).
[3] Mountain Park Homeowners Ass'n, Inc. v. Tydings, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).
[4] State v. Coristine, 177 Wn.2d 370, 380, 300 P.3d 400 (2013).

. The Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington State Constitution protect against deprivation of a person's liberty without due process of law. The right to a fair trial is a "fundamental liberty" protected by the Fourteenth Amendment[5] and article I, section 3.[6] "'[A] trial by a jury, one or more of whose members is biased or prejudiced, is not a constitutional trial.'"[7] An impartial trial "commands jury indifference to race."[8]

Brogi claims Goldberg testified that Native American sex offenders have a higher risk of reoffending than non-Native American sex offenders. He contends that because he is Native American, Goldberg's race-based conclusion biased the jury against him and violated his substantive due process right to a trial by an impartial jury. Brogi likens his case to Buck v. Davis.[9] There, the Supreme Court of the United States held that Buck's trial counsel had provided ineffective assistance. In the penalty phase of Buck's capital murder trial, Buck's counsel introduced expert testimony that Buck's African American race predisposed him to violent conduct.[10] Buck's expert identified race as a statistical risk factor in

[5] In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 703, 286 P.3d 673 (2012).

[6] State v. Davis, 141 Wn.2d 798, 835, 10 P.3d 977 (2000).

[7] Turner v. Stime, 153 Wn. App. 581, 587, 222 P.3d 1243 (2009) (quoting Alexson v. Pierce County, 186 Wash. 188, 193, 57 P.2d 318 (1936)).

[8] State v. Monday, 171 Wn.2d 667, 680, 257 P.3d 551 (2011).

[9] ___ U.S. ___, 137 S. Ct. 759, 197 L. Ed. 2d 1 (2017).

[10] Buck, 137 S. Ct. at 767-69.

predicting future dangerousness and stated that being African American statistically increases an offender's future dangerousness.[11] The Court held that Buck's counsel performed deficiently when he introduced evidence that "appealed to a powerful racial stereotype."[12]

Here, Goldberg testified about his risk assessment of Brogi. Goldberg explained that he analyzed whether Brogi identified with any of three "protective factors," which reduce a person's risk for sexual reoffense. One of these protective factors was completion of cognitive behavioral therapy (CBT). Dr. Elena Lopez, a psychologist for the SCC, testified that the SCC uses a CBT treatment program.[13] Brogi testified that he stopped CBT more than once. He stated that he found it "degrading" and culturally insensitive. He felt like the treatment providers were trying to "colonize" him because they did not want him to speak his language or use a more culturally familiar form of treatment like a medicine wheel.

In anticipation of Brogi's testimony, Goldberg testified about a study looking at how well CBT worked for Native Canadian sex offenders as compared to non-Native Canadian sex offenders. When questioning Goldberg about the study, the State asked, "[D]id native Canadians perform differently in the

---

[11] Buck, 137 S. Ct. at 768-69.
[12] Buck, 137 S. Ct. at 776.
[13] Lopez testified that CBT "focuses on the thoughts and feelings a person has in working to shift or change behaviors."

cognitive behavioral therapy from their non-native comparison group?" Goldberg answered, "No. They basically experienced the same amount of progress. The recidivism rates were a lot higher than the non-Native Americans—native Canadian-Americans, I should say. But they—they all received benefits from that type of treatment."

We distinguish this case from Buck; while Buck made an ineffective assistance of counsel claim, Brogi makes a due process claim. But, like Buck, jurors were not asked to decide a historical fact about Brogi's conduct. Instead, their instructions asked them to make a predictive decision about Brogi that involved some degree of speculation.[14] And as Justice Roberts explained in Buck, "Some toxins can be deadly in small doses."[15]

Goldberg's testimony suggested that Brogi could have a higher risk of reoffending because of his race. This provided support for jurors making a decision about Brogi's freedom based on his race. Goldberg's status as an expert heightened this testimony's potential prejudice to Brogi. "Reasonable jurors might well have valued his opinion concerning the central question before them."[16] This does not "command[ ] jury indifference to race"[17] as the state and

---

[14] See Buck, 137 S. Ct. at 776.

[15] Buck, 137 S. Ct. at 777.

[16] Buck, 137 S. Ct. at 777.

[17] Monday, 171 Wn.2d at 678-80 (holding that the State committed prejudicial prosecutorial misconduct by intentionally appealing to racial prejudices).

federal constitutions require. Goldberg's testimony violated Brogi's constitutional due process right to an impartial jury.

Next, we decide whether the State has shown beyond a reasonable doubt that Goldberg's testimony was harmless error. It has not. The State cannot show that Goldberg's testimony did not give credence to any potential latent racial prejudice held by the jury and did not influence the jury's decision that Brogi's LRA plan did not adequately protect the community. As we noted, and like the Court's assessment of the medical expert in Buck,[18] Goldberg's status as a medical expert may have heightened the value the jury gave his testimony because it assumed Goldberg had the trial court's endorsement.

"'Principles of judicial restraint dictate that if resolution of an issue effectively disposes of a case, we should resolve the case on that basis without reaching any other issues that might be presented.'"[19] Thus, we decline to reach the other issues Brogi raises, including his challenges to a number of the trial court's evidentiary rulings and to the jury instructions.

---

[18] Buck, 137 S. Ct. at 775-77.
[19] Wash. State Farm Bureau Fed'n v. Gregoire, 162 Wn.2d 284, 307, 174 P.3d 1142 (2007) (internal quotation marks omitted) (quoting Hayden v. Mut. of Enumclaw Ins. Co., 141 Wn.2d 55, 68, 1 P.3d 1167 (2000)).

## CONCLUSION

We reverse and remand for a new trial.

_Leach, J._

WE CONCUR:

_Dwyer, J._

_Becker, J._

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2018 APR -2 AH 9:22